George P. TOBLER and Henry Ford Plantation, Inc., Plaintiffs,

v.

YODER & FREY AUCTIONEERS, INC., Defendant, Chemical Bank, Intervenor.

Civ. A. No. 478–114.

United States District Court, S. D. Georgia, Savannah Division.

Dec. 15, 1978.

M. Fleming Martin, III, Brunswick, Ga., for plaintiffs.

Robert E. Falligant, Jr., Falligant, Sims, Hunter & Donaldson, Julian H. Toporek, Falligant, Kent & Toporek, Savannah, Ga., for defendant Yoder & Frey Auctioneers, Inc.

John M. Hewson, III, Hunter, Houlihan, MacLean, Exley, Dunn & Connerat, Savannah, Ga., for intervenor Chemical Bank.

## FINDINGS AND OPINION AND ORDER

LAWRENCE, Senior District Judge.

### I. *History and Issues*

This complicated litigation began with the filing of an action in Bryan County Superior Court on May 16, 1978, by George P. Tobler and Henry Ford Plantation, Inc.

against Yoder & Frey Auctioneers, Inc. in which plaintiffs sought to set aside the sale at foreclosure on May 2nd of a tract of 1,875 acres situated along the Ogeechee River in Bryan County. It was alleged that the circumstances surrounding the sale chilled the bidding and that the price brought was totally inadequate. The Superior Court action was removed to this Court on May 23, 1978 on the ground of diversity.

At the foreclosure sale on May 2nd, Yoder & Frey purchased the 1,875 acre tract for $250,000, the sale being subject to two outstanding first security interests. Williamsburg Savings Bank held a first security deed to 737 acres of the tract on which Yoder & Frey was holder of a second mortgage from Tobler and Henry Ford Plantation, Inc. Federal Land Bank of Columbia, South Carolina held a first security deed on 687 acres of the property. Another first security interest covered approximately 451 acres and was held by Yoder & Frey as a result of the transfer to it in 1976 by First Bank of Savannah of its second security deed on the 1,875 acre tract conveyed by Henry Ford Plantation, Inc.[1] At the same time, Yoder & Frey had purchased the underlying $200,000 note as well as the note in favor of First Bank made by George P. Tobler and John C. Buttolph in connection with the same indebtedness. Tobler had grandiose plans of developing the Henry Ford tract. It became a casualty of the recession that followed the oil embargo in the fall of 1973.

An evidentiary hearing was held by this Court on May 26, 1978, and on June 5th I set the foreclosure sale aside for the reasons given in the accompanying Opinion. A resale of the mortgaged tract was ordered. At the second sale on July 4, 1978, the highest bid was $600,000 and the property was conveyed to A. G. Proctor Company, Inc. subject to the two outstanding first security deeds.

Before this Court is the problem of determining the respective rights of the claimants to the excess of the bid price over the actual indebtedness due Yoder & Frey by Tobler and Henry Ford Plantation, Inc. under the notes and the second mortgage held by the former. By agreement of the parties $65,000 of the purchase price was placed in escrow pending determination by this Court of the matter of entitlement to the surplus.

The claimants to this fund are (a) Yoder & Frey, (b) George P. Tobler and Henry Ford Plantation, Inc., and (c) Chemical Bank. Determination of the rights of the claimants to the contested fund involves issues of fact as well as law. The primary questions before this Court are (1) the sufficiency of the notice by Yoder & Frey to Tobler and Henry Ford Plantation, Inc. of its intention to collect attorney's fees; (2) the recoverability and amount of expenses of collection of the indebtedness claimed by Yoder & Frey on the notes held by it, and (3) the amount of the interest due on such note by the makers.

A third evidentiary hearing was held in connection with the surplus issue on November 21, 1978. A lengthy stipulation between the parties with attached exhibits is part of the trial record. Oral testimony was also heard.

## II. The claims to the surplus fund

The contentions of the three contestants to the escrowed fund are as follows:

(A) Yoder & Frey says that it is entitled to $56,278.12 of the escrowed fund as attorney's fees due it under the terms of the note and its second mortgage.[2] It further contends that expenses of collection of the note and incidental to the foreclosure are owed in the amount of $16,579.98. Yoder & Frey further insists that the interest on the indebtedness is 13½% per annum on the

---

1. Tobler owns the entire stock of Henry Ford Plantation, Inc.

2. Yoder & Frey is assignee of a judgment in the amount of $235,000 obtained by Southern Golf Builders, Inc., in 1975, against Tobler and Henry Ford Plantation, Inc. The lien thereof is ahead of other claims to the surplus. Without objection, it was included in the indebtedness due Yoder & Frey by Tobler and his corporation.

note and not 7% as Chemical Bank and Tobler maintain.

(B) Tobler and Henry Ford Plantation, Inc., claim the over-plus on the theory that they are entitled to the excess under the provision of the second mortgage which states that upon foreclosure the grantee shall collect the proceeds of the sale and, after reserving therefrom taxes, expenses, principal and interest, attorney's fees and expenses of sale, "shall pay any over-plus to the Grantor." It is contended by Tobler and Henry Ford Plantation, Inc. that the notice concerning attorney's fees is insufficient under § 20–506 of the Georgia Code and that its defectiveness precludes recovery of 15% attorney's fees by Yoder & Frey. They also claim that the costs of collection of the note and expenses incidental to the foreclosure are excessive and that various items of the expense claim are not recoverable as a matter of law.

(C) Chemical Bank intervened in the litigation following the second sale of the tract at foreclosure. Its claim to the excess is based on the deed to secure debt dated February 13, 1975, it holds in which Henry Ford Plantation, Inc. conveyed same as part security for an indebtedness of $500,000 guaranteed by it. Tobler had initially in 1973 guaranteed the note personally. Chemical Bank has obtained a summary judgment against Tobler in New York on his guaranty. No part of the principal or interest on the indebtedness has been paid. The accumulated interest totals around $280,000.

The Bank takes the same position as the mortgagors do in regard to the insufficiency of the notice of intent to enforce the attorney's fees provision of the note; the excessive amount of interest claimed by Yoder & Frey to be due to Tobler and his corporation, and the recoverability of various expenses of collection of the indebted-

ness it incurred in connection with the foreclosure and particularly incident to the litigation in the Bankruptcy Court in New York.

There are other collateral and related issues to which this Court will hereafter address itself. They concern generally the standing of Chemical Bank to challenge the sufficiency of the notice and the contention of Yoder & Frey that the other claimants conceded that the notice in question was adequate and that this Court has so found in its Opinion of June 5, 1978.

III. *Sufficiency of the notice to enforce the attorney's fee provision of the note*

The most important of the issues connected with the rights of the three claimants to the fund involves the $56,278.12 claimed by Yoder & Frey as attorney's fees. The notice sent to the debtors on June 12, 1978, identified the indebtedness and stated that the provisions of the promissory note "shall be enforced, and they had *ten days from the date hereof* to pay the principal and interest without additional attorney's fees." (Italics supplied.) [3]

Section 20–506(c) of the Code of Georgia Annotated provides:

"(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has *10 days from the receipt of such notice to pay the principal and interest* without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest

---

3. The notice stated that it was cumulative of other notices previously sent to the debtors. This would include the one sent by First Bank of Savannah on September 3, 1976, which complied with § 20–506. However, the notice by the First Bank is ineffective and cannot be cumulative. See *Baskins v. Valdosta Bank &* *Trust Co.*, 5 Ga.App. 600, 63 S.E. 648; *Aycock v. Tillman*, 14 Ga.App. 80, 80 S.E. 301. The Bank was about to foreclose its second mortgage but such action was stayed by the Chapter XI bankruptcy proceeding filed in New York by Henry Ford Plantation, Inc.

in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice." (Italics supplied).

The difference between the statutory requirement of "ten days from the receipt of this notice" and the notice to the obligors, "ten days from the date hereof", is at best slight. However, in the words of the wounded Mercutio: " 'Tis not so deep as a well, nor so wide as a church-door; but 'tis enough, 'twill serve." *Rom. & Jul.*, Act III, sc. 1. The failure to comply "exactly" with the notice provisions of the statute requires disallowance of recovery of attorney's fees. *Strickland v. Williams*, 215 Ga. 175–177, 109 S.E.2d 761; *Farnan v. National Bank of Georgia*, 142 Ga.App. 777, 236 S.E.2d 923; *Holt v. Rickett*, 143 Ga.App. 337, 238 S.E.2d 706.

The decision in *Adair Realty & Loan Company v. Williams Brothers Lumber Company*, 112 Ga.App. 16, 143 S.E.2d 577, speaks squarely and to the point.

The Court of Appeals there said:
"In the case at bar the notice given by the holder of the note to the maker is deficient in that the alleged notice did not contain the statutory *requirement informing* the maker that she had ten days from the receipt of the notice to pay the principal and interest of the note without obligating herself for the payment of attorney's fees."

". . . The notice here while otherwise substantially complying with the requirements of the statute, merely advised the maker that, if she did not make arrangements to pay the note in full within *ten days from the date of the notice*, rather than from the *date of its receipt* by her, plaintiff would claim attorney's fees provided for in the note." (Italics supplied).

The ruling in *Adair* was followed in *Turk's Memory Chapel, Inc. v. Toccoa Casket Company*, 134 Ga.App. 71, 213 S.E.2d 174. The letter in that case stated that "Payment must be made within ten (10) days from the date of this letter . . . Please contact this office within ten (10) days from the date of this letter to avoid litigation." It was held to be defective.

In the recent case of *General Electric Credit Corporation of Georgia v. Brooks*, 242 Ga. 109, 117, 249 S.E.2d 596, the Supreme Court adopted the substantial compliance test in respect to § 20–506. In doing so it discussed and approved the holding in *Adair*. General legal principles must yield to a specific application of the law made in a decision where the facts are identical to those in the case under consideration.

Another defect in the notice, says Chemical Bank, is the failure to state clearly that the defendants could pay the principal and interest within the ten days of receipt thereof and thereby avoid payment of the attorney's fees under the note. See *Holt v. Rickett, supra*, 143 Ga.App. at 338, 238 S.E.2d 706. The recommended wording of the notice in a modern form-book is found in Brown's Georgia Forms § 81A–108(a)[4].

The decision in *Adair* governs this case. It is binding on a diversity court. It stands insurmountable athwart the contentions of Yoder & Frey. The statute as construed by the appellate courts of this State requires denial of attorney's fees.

IV. *Costs of collection of note and of foreclosure of mortgage*

The note made by Tobler, Henry Ford Plantation, Inc. and Buttolph obligated payment of $200,000 to First Bank of Savannah with interest thereon and "all cost of collection including 15% as attorney's fees if collected by law or through an attorney at law." See Ga.Code Ann. § 20–506. Under Georgia law, a deed to secure debt shall, if so stated therein, "secure all expenses incident[al] to the collection of the debt thereby secured and the foreclosure thereof by action in any court and by exercise of a power of sale therein contained." Ga.Code Ann. § 67–1317.

Costs of the collection of the indebtedness represented by the note and of expenses incidental to the foreclosure charged by Yoder & Frey amount to $16,579.98. By far the greater part thereof represents costs claimed to have been incurred in the vacation of a stay of foreclosure entered in the Bankruptcy Court in the Eastern District of New York in 1976 in a Chapter XI proceeding. The costs include $5,676.16 paid by Yoder & Frey to expert witnesses as fees and expenses for appraisals of the mortgaged property. Expenses of counsel for Yoder & Frey are claimed for airplane fare, hotels, meals, car rentals, photographs of the Plantation tract and miscellaneous items. They total $2,933.07. The expenses incurred for travel of representatives of Yoder & Frey in order to attend foreclosure sales, conferences with counsel and the hearing in New York run to $3,843.31. There is a charge of $423.50 for stenographic services (transcript?). Expense of photostats of documents and long distance calls incurred by counsel for Yoder & Frey amount to $1,291.91. There is also a charge of $600.00 paid to a New York attorney in connection with the bankruptcy proceedings. The expenses claimed for advertising the sale and travel of counsel in connection with attendance at the two foreclosure sales in Bryan County amount to $1,013.52.

It appears that approximately 80% of the total expense and costs of collection charged against Henry Ford Plantation, Inc. was incurred in connection with the litigation in the Bankruptcy Court in the Southern District of New York.

Yoder & Frey rely on § 20–506 and § 67–1317 separately and in combination to support its claim as to the expenses and costs incurred in vacating the stay of foreclosure.

The note secured by the second mortgage includes "all other costs of collection including 15% as attorney's fees if collected by law or through an attorney." There are also provisions therein that expenses of collection in enforcing rights in collateral include reasonable attorney's and legal expenses and that the proceeds of the collateral shall be subject to such expense.

The second mortgage authorizes Yoder & Frey as grantee to retain that part of the proceeds of foreclosure representing "costs and expenses of sale and fifteen per cent (15%) of the aggregate amount due for attorney's fees." Such a provision in a mortgage is statutorily implemented by § 67–1317 which recognizes expenses incident to the collection by foreclosure of the secured debt by foreclosure. The provision in the security deed in respect to collection of attorney's fees does not dispense with the requirements of the notice to collect same in § 20–506. The collection thereof is authorized by the promissory note and is governed by that section. In my opinion, the General Assembly purposefully omitted any reference to attorney's fees in § 67–1317 which was enacted in 1958. It was aware that a debt secured by a deed to secure debt is invariably evidenced by a promissory note. The legislature had already provided in § 20–506 the conditions for enforcement of the contractual obligation as to attorney's fees.

Broadly read, the statute extends to costs incidental to foreclosure but which do not grow out of a suit on the foreclosure proceeding itself. There is a dearth of case law in Georgia on the subject of what costs and expenses are chargeable to the obligor in collecting a note or to a mortgagor in case of foreclosure of the property securing the indebtedness. The interpretational aids to statutory construction are of little assistance in fathoming the legislative intent. Statutes in derogation of the common law are strictly construed. *Warren v. Walton*, 231 Ga. 495–499, 202 S.E.2d 405. However, the statute is not in derogation of the common law. Prior to its passage in 1891 Georgia recognized the validity of contracts for recovery of attorney's fees. *Kirkpatrick v. Faw*, 184 Ga. 170, 175–76, 190 S.E. 566.

V. *The obstructionist efforts of Tobler and Henry Ford Plantation, Inc. to prevent foreclosure of the second mortgage*

In considering the question of whether the General Assembly meant to include

"costs of collection" where they are incurred in independent litigation in another jurisdiction involving the preserving of the mortgagee's exercise of his power of sale, I must confess to my deep concern with any conservative interpretation of the provision therefor in the note, the mortgage and the Georgia statutes in reference thereto.

The arrangement proceedings brought by Henry Ford Plantation, Inc. in New York in 1977 were meritless and were eventually found to be so by the Bankruptcy Court. They were brought in the name of Tobler's wholly-owned corporation. He was, I find from the evidence, its *alter ego*. The patent purpose of the New York proceeding was to delay foreclosure of the second mortgage, a result achieved by the automatic stay called for under Bankruptcy Rule 12–43(a).

After months of litigation in the Bankruptcy Court in New York and after considerable expense and trouble to Yoder & Frey, the stay was vacated by consent of the parties subject to certain conditions. The result of the Order vacating the stay was to delay the foreclosure until April, 1978.

Shortly before the advertising of the sale commenced, Tobler individually filed a petition for arrangement under Chapter XII in the Southern District of Georgia. It resulted in an automatic stay of the foreclosure. A hearing consuming eight hours of time was held by Bankruptcy Judge Coolidge. On May 1, 1978, the day before the scheduled sale of the tract at public outcry, he entered findings and conclusions and vacated the stay. This did not feaze Mr. Tobler. On the morning of May 2, 1978, the day of the public sale, Tobler and his corporation claiming to be a co-partnership filed a Chapter XII proceeding in the Bankruptcy Court at Brunswick with the avowed purpose of obtaining another automatic stay. Bankruptcy Judge Coolidge informed petitioners' counsel that he would immediately vacate same. The Chapter XII proceeding was not pressed by Tobler and was subsequently dismissed by the Bankruptcy Court.

Judge Coolidge's Order denying the stay contains the following animadversions on the subject of Tobler's conduct in filing the bankruptcy proceeding in this District in his individual capacity following the lifting of the stay in New York:

"[H]e chose to bargain both for himself and the corporation and achieved a settlement in which all parties gave up something and all parties gained something. In short, he not only made his bargain, he invoked the solemn powers of the United States District Court of the Eastern District of New York to solemnize and sanctify that agreement and now having received full benefit of the weight and authority of that Court, he has chosen to openly reject the Court's authority to order him to do anything. He has stated in this proceedings that he was advised that the Order was not binding on him and that he entered into the Order with that belief. Yet he waited until the day before the sale to challenge that Order, after all other parties to the Order had abided by its terms."

VI. *The decisional law in respect to recovery of costs and expenses incurred in separate actions involving the right to foreclose*

There are no Georgia cases at full point. Decisions in other jurisdictions relied on by Yoder & Frey include *Leventhal v. Krinsky*, 325 Mass. 336, 90 N.E.2d 545, 548 (1950). There the Supreme Judicial Court of Massachusetts held that the costs and expenses of collection of a note secured by a mortgage authorizing recovery of attorney's fees incurred were reasonable where the same were incurred in preserving the mortgaged property. The case of *John Hancock Mut. Life Ins. Co. v. Casey*, 155 F.2d 229, 235 (1st Cir.) involved a bankruptcy proceeding. The First Circuit said that counsel fees are properly chargeable as collection of costs against the debtor in a bankruptcy proceeding where they were incurred in order to protect the mortgagee's security interest as a result of his efforts to obtain a vacation of an injunction issued against foreclosure of the mortgage.

My research of the law has turned up two Georgia decisions which appear to relate to the factual situation we are confronted with in this case.

In *Ray v. Pease*, 97 Ga. 618, 25 S.E. 360 the purchase money notes provided for payment of "all costs of collection, including attorney's fees." After suit was instituted on the notes by the holder, the defendant filed an action to enjoin the action upon the ground that the plaintiff could not convey marketable title to the land. The trial court denied an injunction and the ruling was affirmed on appeal. See 95 Ga. 153, 22 S.E. 190. At the trial of the suit on the notes plaintiff argued that the cost of attorney's fees in defending the injunction proceeding should be considered by the jury in determining a reasonable fee for the legal services. The Supreme Court said:

> "[T]he plaintiffs were entitled to recover such an amount as would be reasonable for the services rendered. *In order to collect the notes it was necessary, not only to bring the present suit, but to resist the attempt of the defendant to enjoin the suit*; and the services rendered by the plaintiffs' attorneys in the injunction case were therefore properly allowed to be considered by the jury in determining the amount of fees which the plaintiffs were entitled to recover, especially when it appeared from the decision of this court that the petitions sued out by the defendant to restrain the collection of the notes were *without merit and resulted only in delaying the plaintiffs in the enforcement of their legal rights to collect the notes*." (Italics supplied).

However, in *Franklin Mortgage Company v. McDuffie*, 43 Ga.App. 604, 159 S.E. 599 a different result was reached. There the security instrument provided for payment of reasonable attorney's fees incurred in a suit in which the holder was a party or where it was necessary to intervene in order to protect the lien or the priority thereof. In the syllabus to that decision prepared by the Court it was said that the purpose of the provision referred to was that of "protecting his security, and would not entitle him to recover on account of attorney's fees incurred in defending a suit brought by the maker of the note to restrain a suit at law instituted upon the note." The Court of Appeals ruled that the trial judge did not err in striking plaintiff's amendment seeking recovery of the expense of attorney's fees incurred defending the action for injunctive relief. That holding was not elaborated upon in the body of the Court's Opinion.

The decisions in *Ray* and *Franklin Mortgage Company* walk a lonely road along Georgia law. They have been cited but not for the propositions referred to above. Each involved a bond for title, a factor that is not significant since such an instrument is in essence a deed to secure debt. Ga. Code Ann. § 67–1301; *Carter v. Johnson*, 156 Ga. 207, 119 S.E. 22. Both cases dealt with recovery of attorney's fees rather than other costs of collection. However, the two types of expense or cost are familial in nature. See *McClain v. Continental Supply Co.*, 66 Okl. 225, 168 P. 815, 818.

 To the extent that the decisions are in conflict, that of the Supreme Court is controlling upon a federal diversity court. I have decided to follow *Ray v. Pease* in reaching my conclusion as to recovery of reasonable expenses and costs, exclusive of attorney's fees, in connection with vindication of the right of foreclosure. *Ray* supports an award of costs and expenses in a case where an insolvent mortgagor files a bankruptcy proceeding with the intent to hinder and delay the mortgagee in foreclosing his security deed and the latter must appear therein to protect his right to the exercise of the power of sale.

I move on to a consideration of other issues.

VII. *The contention of Yoder & Frey that this Court has found that valid and proper notice to collect attorney's fees was given and that opposing counsel conceded that fact*

(a) The contention that this Court approved the sufficiency of the notice reminds

one of the reference by Tennessee Williams in *Orpheus Descending* to the "kind of bird that don't have legs so it can't light on nothing and has to stay all its life in the sky."

In this Court's Opinion of June 5, 1978, I stated (gratuitously, may I add) that "All other prerequisites to the sale have been satisfied by the defendants, including timely notice of intent to collect attorney's fees."

At that time no issue had been raised as to the sufficiency or validity of the notice. In fact, the notice applicable to the July sale was not sent to the mortgagees until June 12, 1978. It was practically identical to the one given in March. The last thing this Court had in mind was to pass on a matter not before it without the point of law having been specifically raised or argued. The language used does not support the contention of counsel. This Court said no more than that "timely notice" of the intention to collect attorney's fees had been given by Yoder & Frey. It did not say that the notice was sufficient or valid.

In the Order of the Court dated August 9, 1978, confirming the sale and ordering the distribution of $535,000 to Yoder & Frey, the statement appears that no objections had been raised as to the "regularity of the notice." Chemical Bank filed its petition to intervene on July 14th. The question of the *sufficiency* of the notice was not explicitly raised either there or in its briefs supporting the intervention. Leave to intervene was granted on August 21, 1978. The purpose of the intervention by Chemical Bank was to protect its interest in a proper accounting of expenses and in connection with the surplus. That subject includes Yoder & Frey's claim of 15% attorney's fees. After the intervention by Chemical Bank, it raised the question of validity of the notice. I had no intention in my Order of August 9th, approving the sale, of foreclosing consideration of such an issue. It was and is very much alive.

(b) At the evidentiary hearing on November 21st an attorney for Yoder & Frey testified that all counsel had agreed that his client's right to attorney's fees would not be questioned. He further testified that at one of the earlier hearings such a concession had been made of record. The tapes have been replayed. I find nothing in them to support such contention. Counsel also stated that the attorney for Chemical Bank had assured him in an out-of-court discussion that such issue would not be raised. This was heatedly denied by the Bank's attorney.

Whatever the facts may be in that regard, this wrangling of counsel is not judicable. I move on to the excessive interest claim of the plaintiffs and intervenor.

## VIII. *The rate of interest dispute*

Chemical Bank insists that the indebtedness of Tobler and Henry Ford Plantation, Inc. to Yoder & Frey must be reduced to the extent of the excessive interest paid or to be paid, that is to say, the difference between the legal rate collectible under Georgia law after maturity of a note (7%) and the 13 ½% rate plaintiffs, Tobler and the corporation, agreed to pay. I say "agreed" both in the light of their course of conduct and in view of the notes themselves which state that the debt bore interest at the rate specified. That rate was 13½% per annum.

The maker of the original note payable to First Bank of Savannah was U.S. Financial Southeast, Inc. It was dated February 1st, 1973 and was in the amount of $52,457.55. It bore interest at 8½% per annum. The note and the second mortgage was later transferred to Tobler by First Bank. Subsequent renewals were executed by him as advances were made by the Bank on the $200,000 principal. On June 20, 1974, the full amount thereof was advanced. Apparently, it was at this period that the interest rate was increased to 13½%. On October 18, 1974, Tobler and John C. Buttolph executed a new note in the amount of $200,000 secured by First Bank's second mortgage. The interest rate agreed on was 13½% until the note was "paid in full." It matured without payment on November 18, 1974.

The litigants have stipulated that the higher interest rate was paid by (or on behalf of) George P. Tobler from October 18, 1974 through May 30, 1976. Interest payments on the principal from the latter date up to the July 4th sale this year total $56,515.17. At the legal rate of interest the total interest from June 1, 1976 through July 4, 1978 would have been $29,322.33. The difference between the two rates is $27,192.84.

Chemical Bank contends that under Georgia law the legal rate constitutes the governing interest rate on a note after maturity where the instrument is silent on that subject. See *Jenkins v. Morgan*, 100 Ga. App. 561, 112 S.E.2d 23; *Fitzgerald v. United Virginia Bank of Roanoke*, 139 Ga.App. 664, 667, 229 S.E.2d 138; 11 C.J.S. Bills and Notes § 722d.

As stated, Tobler (or his corporation) voluntarily paid the 13½% rate after maturity. No question was raised as to the applicability of that rate. It was not usurious under Georgia law. Ga.Code Ann. § 57–119.

The note dated October 18, 1974 was never renewed. Its comaker, Buttolph, refused to do so. The Bank did not want to release him by obtaining a renewal note executed only by Tobler. Counsel for Chemical Bank capitalizes on that fact, arguing that the payment of the 13½% rate *after maturity* amounted to an oral agreement to vary the applicable 7% legal rate of interest. The mutual consent of all parties, says the Bank, was essential and Buttolph had refused to sign a renewal. Therefore mutuality is lacking and the higher rate cannot be charged by Yoder & Frey. So the Bank contends. It argues that "While a new verbal contract may be substituted for a valid written contract the new contract must arise from the mutual consent of all of the parties to the original contract." See Ga.Code Ann. § 20–116.

This Court is not persuaded by the argument of Chemical Bank that the blank space in the note for insertion of the interest rate was not filled in. However, the 13½% figure appears in the disclosure state-ment in the right hand corner of the note. The purpose of the information there stated was, of course, to comply with the Truth-in-Lending requirement in disclosing the Annual Percentage Rate. Counsel for Chemical Bank argues that the recitations in the block have nothing to do with the note proper. The President of First Bank of Savannah, Howard Gaines, testified on deposition that the Truth-in-Lending block was utilized by the Bank and treated as the date of the note and the interest rate. However, Wilton C. Futch who was "number two man" in First Bank of Savannah at the time testified that the interest rate in the note itself would normally have been filled in.

Be that as it may, Tobler and the Bank acted on the statement in the disclosure block that the interest rate was 13½% per annum. Tobler and/or Henry Ford Plantation, Inc. paid on that basis. Parol evidence as to the date of a note or rate of interest may be received where the latter does not clearly appear in the instrument itself. 12 Am.Jur.2d Bills and Notes pp. 1258, 1260.

IX. *Chemical Bank's standing to contest the validity and sufficiency of the mortgagee's notice to collect attorney's fees*

At the hearing in this Court on November 21st last I broached the subject of Chemical Bank's standing to contend that there was an insufficient compliance by Yoder & Frey with the notice statute. Here the Bank is not a party to the note or to the second mortgage. The requirements of § 20–506 as to proper notice is for the benefit of the debtor, not strangers to the contract.

I have concluded however, that the claimants to the fund should stand on a parity as to the defect in the notice of intent to collect attorney's fees. It is axiomatic that equality is equity (*Williams Bros. Lumber Company v. Anderson*, 210 Ga. 198, 206, 78 S.E.2d 612) and we are in a court of equity. The fund is a common one.

The Bank has an interest in contesting the mortgagor's indebtedness wherever items may be erroneously charged or claimed.

Parity among claimants in such a case does not contemplate increasing the recovery by Tobler and reducing same in the instance of Chemical Bank. The Schoolmen of the medieval era would revel in such a subtlety.

### X. *The claim of Tobler and Henry Ford Plantation, Inc. to the fund*

The mortgagors claim the escrowed fund on the basis of the provision in the second mortgage which states that any over-plus on the sale after payment of the debt, costs, etc., belongs to the grantor.

The trouble with this claim upon the fund is that Chemical Bank holds a security deed from Tobler and Henry Ford Plantation, Inc. secured by the property foreclosed on. It is superior to any right of theirs to the over-plus. The underlying note secured by the Bank's deed to secure debt is in default. Its lien to the surplus did not vanish with the foreclosure by the second security deed held by Yoder & Frey. Under Georgia law, where a surplus is created by foreclosure of a mortgage a court of equity will impress upon the fund the lien of a claimant. See *East Atlanta Bank v. Limbert et al.,* 191 Ga. 486, 490, 12 S.E.2d 865. Chemical Bank's lien under its security deed was transferred to the fund and, as stated, is paramount to any claim thereto of Tobler and Henry Ford Plantation, Inc.

The exertions of Mr. Tobler resulted in a resale of the property for $600,000 instead of the $250,000 bid by Yoder & Frey at the first sale. Tobler created the surplus. His success in that respect is akin to Pyrrhus' victory over the Romans at Heraclea. The triumph proved to be a disaster.

### XI. *Costs of collection revisited*

I return to the subject of the collection expenses incidental to the foreclosure which was discussed in Part IV of this Opinion. I will now deal more specifically with the matter of recoverable items and the proper amount of the costs and expenses claimed by Yoder & Frey incident to the foreclosure. Its lien under the second mortgage is superior in respect to costs and expenses incurred, both under the terms of the mortgage and the general law. See *Bob Parrott, Inc. v. First Palmetto Bank,* 133 Ga. App. 447, 211 S.E.2d 401.

I ruled earlier that under the facts of this case, Yoder & Frey is entitled to the reasonable costs and expenses in vindicating in the bankruptcy court in New York its right to exercise its power of sale under the second mortgage it held on the property.

The parties are at odds over what are recoverable and reasonable costs of collection. Yoder & Frey's right to charge various items included in arriving at the total owed by the mortgagors is challenged.

It is the duty of a mortgagee in conducting a sale under a power contained in a security deed or mortgage to keep the expenses within reasonable bounds. 55 Am. Jur.2d Mortgages § 758. Tobler and Chemical Bank maintain that the costs of collection of the note and the expenses claimed incidental to the foreclosure are excessive and that in a number of instances are not recoverable.

Attached as an Appendix to this Opinion is a break-down of expenses and costs charged by Yoder & Frey against Tobler and Henry Ford Plantation, Inc. Part of the items of expense included represent the travel of attorneys. I have ruled that the notice as to attorney's fees was defective. The 15% recovery provided for in the note and second mortgage, pursuant to the statute, was intended to embrace *all* attorney's fees. Such cannot be collected under the guise of costs or expense of collection allowable by the provisions of the note and security deed. To me "all costs of collection including 15% as attorney's fees" means expense incurred in employing an attorney to collect the indebtedness due on the note, or, as in this case, cost of litigation in which the mortgagee has to take part in to protect his security interest. Attorney's fees are not chargeable on the theory that they are

"costs" independent of the 15% attorney's fees allowed under the note or security deed.[4]

So viewed, the $600.00 item incurred for services of New York counsel must be eliminated. This is also true of the travel expenses of attorneys employed by Yoder & Frey which have been charged to Tobler and Henry Ford Plantation, Inc. in the amount of $2,803.59. These include trips by counsel to New York as well as Bryan County. Generally, an attorney is entitled to disbursements made by him ·which are necessary in carrying out the object of his employment. 7 C.J.S. Attorney and Client § 180. Such an expense is so closely related to the fee itself that no realistic distinction can be drawn between the two as to chargeability to the client. If attorney's fees are *not* recoverable, neither are expenses of counsel. Such is my view of the law and logic of the matter.

Yoder & Frey has charged to the mortgagors the travel expenses incurred by officials on various trips. They total $3,843.31, and consist of travel for court appearances ($533.35); conferences with their attorneys ($853.63), and attendance at two foreclosure sales in Bryan County as well as the one advertised for April 1978 but which had to be called off as a result of the automatic stay following the filing of the Chapter XII proceeding in bankruptcy at Brunswick ($2,456.33).

In considering travel costs one needs to keep in mind the difference between expenses incurred in connection with the litigation relating directly to the protection of Yoder & Frey's power to foreclose as opposed to expenses incidental to the foreclosure proper. Only those in the former category have been allowed.[5]

The only item of travel in connection with the New York litigation amounts to $231.29. It is allowed. There is an item of $302.06 as expense of travel to Savannah by Yoder & Frey's officers for attendance at the evidentiary hearing before Bankruptcy Judge Coolidge. Such is a proper and allowable charge since it was necessary to protection of the security. It appears that $445.67 was incurred by Yoder & Frey in attending a conference with counsel concerning the New York bankruptcy proceedings. Same is allowed. Travel expenses apparently claimed in connection with a conference with counsel at Savannah concerning the future conduct of the case ($407.96) are not allowed. This was *after* the Order in New York lifting the stay until April, 1978.

All the other costs sought involve attendance by Yoder & Frey personnel at the foreclosure sales. They are disallowed as are telephone tolls ($766.55) and photocopies ($801.60).

This Court allows the expenses incurred by Yoder & Frey for the two expert witnesses on value whose testimony in the bankruptcy courts in New York was essential to opposing the stay of the foreclosure.

---

4. A provision in a note allowing attorney's fees and costs of collection in addition to the indebtedness does not impair its negotiability. *Stapleton v. Louisville Banking Company*, 95 Ga. 802, 23 S.E. 81. However, while the decision is relevant only in small degree, attention is called to *Nussenfeld v. Smith, et al.*, 110 Conn. 438, 148 A. 388, 390 (Sup.Ct. of Errors, Conn., 1930). The Court there recognized the general rule as to non-negotiability. It added in reference to a provision of the note allowing cost of collection by foreclosure that such "goes far beyond the costs and attorney's fees which might be included in the collection of the note. It would embrace, for instance, the costs and fees incurred in an action to cancel the note for fraud in its inception, or to reform it on the ground of mistake. The costs, charges, and expenses which might be incurred under this provision might amount to a very large sum, left entirely indefinite by the terms of the note."

5. When I was at the bar, I handled many foreclosures and observed numerous others. I never saw a power of sale exercised where expenses incurred by the mortgagee in attending the foreclosure was sought or allowed as part of the secured indebtedness. As an illustration of the conservative approach of some courts to costs of foreclosure, see *Griffith v. Dale*, 109 Md. 697, 72 A. 471, 472. There the Supreme Court of Maryland ruled that costs and expenses of a foreclosure sale includes only advertising costs, services of an auctioneer, and other expenses necessary to an advantageous sale.

Such item of expense amounted to $5,676.19.

It appears that various other expenses were incidental to the bankruptcy proceedings in New York. These include Modern Shorthand ($423.50); copy of the Joseph Blake appraisal ($35.00); filing fee ($15.00); photographs of the mortgaged property ($149.50), and an item for service of process in New York billed by Academy Process Service ($50.00). These expenses which total $673.00 are allowed.

■ Advertising costs of foreclosure sales are ordinarily recoverable. Here, however, the Order of this Court dated June 5, 1978, made it clear that a condition of the resale there granted was that Tobler should bear the cost of the advertising of both the May and the July foreclosure sales. The amount of $392.00 was accordingly deposited with the Clerk of this Court covering the cost of the two legal advertisements. Costs of the three advertisements amount to $644.08. They are not allowable to the extent of $392.00. However, $252.08 is recoverable by Yoder & Frey. It appears to grow out of the meritless Chapter XII proceeding by the mortgagors in this jurisdiction which automatically stayed such foreclosure.

Among the expenses billed by the attorneys for Yoder & Frey is a $600.00 advance made to the Clerk of the Superior Court of Bryan County for the State transfer tax after the resale at foreclosure. This is a legitimate item of expense and is allowed. The claim of witness fees ($88.00) appear to relate to the bankruptcy proceedings in this Court. It is allowed.

■ Several items included in the list of expenses have not been explained. Their precise nature has not been made known to this Court. The cost of removal of the complaint to this Court is not taxable against the mortgagees. Miscellaneous costs of $33.60 are not explained. The bankruptcy court in Brunswick has no record of such charges. They are not allowed.

## XII. *The bottom line*

■ Applying the findings and conclusions in Part XI, this Court comes up with the following computation of the amount owed to Yoder & Frey by the mortgagors at the time of the foreclosure as adjusted by the various credits and debits applicable to mortgagee's claim:

| | |
|---|---|
| Debt secured by second mortgage | $200,000.00 |
| Interest owed thereon | 56,515.07 |
| Judgment in favor of Southern Golf Builders, Inc. against Tobler and Henry Ford Plantation, Inc. purchased by Yoder & Frey | 235,000.00 |
| Interest on that judgment | 36,137.70 |
| Expenses of collection allowed | 8,268.29 |
| Total due Yoder & Frey | 535,921.06 |
| Less amount disbursed | 535,000.00 |
| Amount of escrowed fund to which Yoder & Frey is entitled | 921.06 |
| Escrowed fund | 65,000.00 |
| Less disbursement to Yoder & Frey | 921.06 |
| Balance due Chemical Bank | $ 64,078.94 |

### L'Envoi

I have personally spent over 100 hours on this litigation, excluding the time of my law clerk (and secretary). I intend to spend precious little more. There will be no more evidentiary hearings. Three are enough. I am not going to relitigate the merits of any part of this case.

That there will be disagreement and disappointment I quite well recognize. If so, don't come weeping and wailing to this Court. Tell it to the Fifth Circuit.

### ORDER

Judgment will be entered against the claim of George P. Tobler and Henry Ford Plantation, Inc. to the fund in escrow. The amount of $64,078.94 will be payable out of the fund to the intervenor, Chemical Bank. The balance will go to Yoder & Frey Auctioneers, Inc. in the amount of $921.06.

This is not a final judgment. Before entering judgment on this Order, the parties will have the opportunity on or before December 22nd next to object in writing to the mathematical computations or to significant and palpable error other than the rulings themselves. As Thackeray says in the last line of *Vanity Fair*: "Come children, let us shut up the box and the puppets, for our play is played out."

Appendix A

Expenses Claimed

1. Modern Shorthand ....................... $ 423.50
2. Joseph Blake & Associates .............. 35.00
 (Copy of Appraisal)
3. United States District Court ........... 15.00
 (New York, Filing fee)
4. Wilhoit Photography .................... 149.08
 (Photos of Henry Ford Plantation)
5. Pembroke Journal and Savannah
 News Press ............................. 532.00
 (Advertisements)
6. J. M. Adams, Appraiser ................. 2,928.07
 (witness fee & expenses)
7. Hugh Armstrong, Appraiser ............. 2,748.09
 (witness fee & expenses)
8. Jules V. Speciner ...................... 600.00
 (Attorney fee)
9. New York—trips of attorneys:
 (a) 12/8–9/76: Air fare ...... 232.00
 Lodging .................. 36.62
 Meals, tips, taxi, etc. .. 75.00
 (b) 2/11/77: Air fare ........ 158.00
 Hertz, Rent-a-car ........ 59.65
 Meals, lodging, tips,
 misc., etc. ........... 326.21
 (c) 3/16/77: Air fare ........ 160.00
 Avis, Rent-a-car ........ 57.57
 Meals, lodging, tips,
 etc. .................. 125.00
 (d) 4/20/77: Air fare ........ 160.00
 Meals, lodging, taxi,
 etc. .................. 150.00
 (e) 5/30/77: Air fare ........ 160.00
 Meals, lodging, tips,
 taxi, etc. ............ 150.00
 Hertz, Rent-a-car ........ 37.58
 (f) 8/11/77: Air fare ........ 248.00
 Hertz, Rent-a-car ........ 135.00
 Witness, meals, tips,
 taxi, etc. ............ 320.00
 Lodging ................. 143.36
 SUB TOTAL ......... 2,733.99

10. Mileage, trips of attorneys to Pembroke ... 54.40
11. Academy Process Service, Inc. ............. 50.00
12. Witness Fees .............................. 88.00
13. Bond Fee (removal) ........................ 20.00
14. Miscellaneous ............................. 33.36
15. Gay Oldfield, Court Reporter ............. 15.75
16. Photocopies ............................... 704.00
17. Long Distance tolls ....................... 592.91
18. Advances by Robert E. Falligant, Jr.;
 atty. .................................... 1,013.52
19. Yoder & Frey Auctioneers, Inc.* ........... 3,843.31

 TOTAL ............. $16,579.98

* This item consists of travel expense of Yoder & Frey representatives incurred in trips for court appearances ($533.35); conferences with counsel ($853.63); and attendance at foreclosure sales ($2,456.33).