George P. TOBLER et al., Plaintiffs,

v.

YODER & FREY AUCTIONEERS, INC., Defendant-Appellant Cross-Appellee,

Chemical Bank, Intervenor-Appellee Cross-Appellant.

No. 79–1236
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 2, 1980.

Rehearing Denied Aug. 22, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Julian H. Toporek, Robert E. Falligant, Jr., Savannah, Ga., for defendant-appellant cross-appellee.

John M. Hewson, III, Savannah, Ga., for intervenor-appellee cross-appellant.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The facts relevant to this appeal are set out in full in the district court's opinion, which is reported at 462 F.Supp. 788 (S.D. Ga.1978). We can briefly state the facts necessary to an understanding of the two issues on appeal. First Bank of Savannah held a note, from George P. Tobler, which was secured by real estate owned at the times relevant to this appeal by Tobler and Henry Ford Plantation, Inc., as tenants in common. On September 3, 1976, First Bank gave Tobler, pursuant to Ga. Code Ann. § 20–506(c),[1] notice of its intent to foreclose[2] on the deed to secure the debt and to enforce the attorney's fees provisions of the note and deed to secure debt, and initiated foreclosure proceedings. On September 30, 1976, Henry Ford Plantation, Inc. filed bankruptcy proceedings in the Eastern District of New York, which had the effect of staying First Bank's foreclosure. On December 1, 1976, Yoder & Frey Auctioneers, Inc. (Yoder & Frey) acquired, by assignment, the note and deed to secure debt from First Bank. A settlement was reached between Tobler, individually and on behalf of Henry Ford Plantation, Inc., and Yoder & Frey. The settlement was incorporated into the September 1, 1977, order of the bankruptcy judge of the United States District Court for the Eastern District of New York. The settlement provided that collection of the debt, by foreclosure on the property securing it, would be deferred until April 4, 1978, at the earliest.[3] In exchange, the automatic stay provisions in the New York bankruptcy proceedings were vacated and Tobler, individually and as representative of any legal entity (e. g. Henry Ford Plantation, Inc.) having an ownership interest in the property at issue, agreed to waive all future rights to invoke the automatic stay provisions of any bankruptcy act, state or federal.

When Tobler did not satisfy the debt, Yoder & Frey on March 3, 1978, and June 12, 1978, respectively, gave notice of its intent to foreclose and to collect attorney's fees pursuant to Ga. Code Ann. § 20–

[1]. Ga. Code Ann. § 20–506(c) reads as follows: Attorney's fees in notes, etc., in addition to interest. Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions: (c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice.

[2]. For purposes of this decision, the term "foreclose" is used loosely to include the nonjudicial exercise of the power of sale in a deed to secure debt and also any judicial procedure in the nature of a foreclosure.

[3]. The settlement agreement further provided that in order to proceed with a foreclosure sale in April, 1978, Yoder & Frey could begin legal advertising of such sale as notice by publication pursuant to Georgia law on or after March 1, 1978.

506(c).[4] The encumbered real estate was sold under the power of sale contained in the deed to secure debt to First Bank on May 2, 1978. Tobler and Henry Ford Plantation, Inc. (hereinafter collectively called debtor) commenced the present action, and the court below set aside the foreclosure sale and ordered a resale. This appeal involves the proper distribution of the resale proceeds. Since debtor's claim can be considered abandoned, its cross-appeal having been dismissed by this court for want of prosecution on September 6, 1979, the only remaining claimant, besides Yoder & Frey, is the Chemical Bank, whose claim is based on a security interest in the real estate which is subordinate to the position of Yoder & Frey.

The two issues presented on this appeal are: (1) whether the district court erred in rejecting the attorney's fees claim of Yoder & Frey;[5] and (2) whether the district court erred in sustaining the claim of Yoder & Frey to interest at the rate of 13½% per annum on the principal balance of the note acquired by Yoder & Frey from First Bank of Savannah.[6]

## ATTORNEY'S FEES

The notices of intent to collect attorney's fees, given by Yoder & Frey on March 3, 1978, and June 12, 1978, stated that the debtor would have ten days from the *date of the notice* to pay in full and avoid further attorney's fees.[7] Ga. Code Ann. § 20–506(c) requires that the debtor be informed that he has ten days from *receipt* of the notice to avoid paying attorney's fees by paying the principal and interest in full. We agree with the district court that the notices sent by Yoder & Frey were deficient. On this issue, we adopt the reasoning of the court below, its interpretation of § 20–506(c) as requiring that the debtor be given ten days from the date of *receipt* of the notice, and its reliance on *Adair Realty & Loan Co. v. Williams Bros. Lumber Co.*, 112 Ga.App. 16, 143 S.E.2d 577 (1965) and *General Electric Credit Corp. of Georgia v. Brooks*, 242 Ga. 109, 249 S.E.2d 596 (1978). We base our determination additionally on the decision of the Georgia Court of Appeals in *Gorlin v. First National Bank*, 148 Ga.App. 133, 250 S.E.2d 798 (1979), rendered after the district court's decision in the case before us. In *Gorlin*, the court of appeals held that a notice with the same flaw as the one at issue here did not "substantially comply" with Ga. Code Ann. § 20–506(c) and that disallowance of attorney's fees was therefore required.

---

4. Yoder & Frey's March 3, 1978, notice to Tobler read as follows:
   Gentlemen:
   Notice is hereby given pursuant to Section 20–506 of the Georgia Code that certain obligation dated October 18, 1974 from . . . . George P. Tobler to First Bank of Savannah, Savannah, Georgia in the principal amount of $200,000.00, a copy of which is attached hereto as Exhibit "A", has matured and is now in default because of nonpayment.
   You are further notified that the holder of said obligation, Yoder & Frey Auctioneers, Inc., further notifies you that the provisions of said Note and the Deed to Secure Debt which *secures it relative to payment of attorneys fees* in addition to the principal and interest shall be enforced, and they have *ten days from the date hereof* to pay the principal and interest without additional attorneys fees.
   You are further notified that pursuant to the attached Notice of Sale, marked Exhibit "B", the property securing this indebtedness will be sold at public sale in accordance with the terms of the Deed to Secure Debt described in the Notice of Sale during the legal sale hours on the first Tuesday in April at the Courthouse door in Pembroke, Bryan County, Georgia.
   This notice is in addition to all other prior notices given you previously, and is not to be construed as superseding such notice which related to prior foreclosure actions and payment of attorneys fees and expenses in connection therewith. (emphasis added)
   The June 12, 1978, notice was identical except for the sale date.

5. The district court's rejection of Yoder & Frey's attorney's fees claim increased the funds available for distribution to satisfy Chemical Bank's inferior security interest.

6. The district court rejected Chemical Bank's argument that the legal rate of 7% should apply. The finding that Yoder & Frey was entitled to an interest rate of 13½% decreased the funds available for distribution to Chemical Bank.

7. See footnote 4, *supra*, for complete text of Yoder & Frey's notices.

Yoder & Frey makes an alternative argument that, even if its own March 3 and June 12, 1978, notices were deficient, it can nevertheless rely upon the September 3, 1976, notice given to the debtor by the First Bank of Savannah. The district court rejected this argument, citing *Baskins v. Valdosta Bank & Trust Co.*, 5 Ga.App. 600, 63 S.E. 648 (1908) and *Aycock v. Tillman*, 14 Ga.App. 80, 80 S.E. 301 (1913). In *Aycock*, the court said that collection of attorney's fees could be defeated if the suit were "brought in the name of a person neither expressly nor impliedly named in the notice as the holder of the note." 80 S.E. at 301. In *Baskins*, the court pointed out that the debtor might have had a good defense against the original payee, and thus might have decided to risk paying attorney's fees in order to assert a defense. Since the debtor's possible defenses against an assignee could be different, he is entitled to a new notice from the assignee and a new chance to avoid paying attorney's fees.

In this case, Yoder & Frey acquired its interest in the note with notice that the note was in default. Yoder & Frey thus took the note subject to contract defenses that debtor might have asserted against First Bank. Ga. Code Ann. §§ 109A–3–302(1)(c) and 109A–3–306(b). Because we find that the settlement agreement entered into between debtor and Yoder & Frey is itself sufficient to require a new, post-settlement notice concerning attorney's fees, we need not decide whether *Baskins* and *Aycock* require a new notice to be given by an assignee who is not a purchaser for value without notice.

The settlement agreement was incorporated into the September 1, 1977, order of the bankruptcy judge of the U.S. District Court for the Eastern District of New York.

The agreement provided, among other things, for lifting the automatic stay provisions of Bankruptcy Rule 11–44, which had restrained Yoder & Frey from foreclosing its deed to secure debt, but also provided that collection of the debt, by foreclosure of the property securing it, would be deferred until April, 1978. In exchange for this deferral, debtor waived the automatic stay provisions of any bankruptcy act, state or federal, in the future, agreed to procure fire insurance covering buildings and improvements on the land which is the subject of this controversy, agreed to make a payment on a mortgage which was a first lien on the subject property, and agreed to certain other conditions. We think that this settlement agreement extended the maturity date of the obligation. The statute plainly requires that the notice concerning attorney's fees be given *after maturity*. The requirement that the notice be given after maturity is a matter of substance, and not a mere technicality. See *General Electric Credit Corp. of Georgia v. Brooks*, 242 Ga. 109, 119, 248 S.E.2d 596 (1978). We conclude, therefore, that in light of the new maturity date, Yoder & Frey has not carried its burden of proving full compliance with the statute.[8]

Yoder & Frey seeks to rely in yet another way on the September 3, 1976, notice given by the First Bank of Savannah. Yoder & Frey argues that the September 3, 1976, notice "fixed" the liability for attorney's fees, and that the fees thereupon became part of the principal debt, which was thereafter assigned to Yoder & Frey. The several cases [9] cited by Yoder & Frey do contain language indicating that upon expiration of ten days after the notice, attorney's fees become "fixed" or "vested." However, in all of the cases cited, either judgment had

---

8. "The burden is on the entity seeking to collect attorney fees on a note in default to prove that all the conditions of Code § 20–506 have been met." *Citizens & Southern National Bank v. Bougas*, 149 Ga.App. 722, 726, 256 S.E.2d 37, 41 (1979).

9. *Evans v. Atlantic National Bank of Jacksonville*, 147 Ga. 621, 95 S.E. 219 (1917); *Morgan v. Kiser & Co.*, 105 Ga. 104, 31 S.E. 45 (1898);

*Krupp v. Taylor Enterprises, Inc.*, 148 Ga.App. 440, 251 S.E.2d 364 (1978); *Bank of Early v. Broun*, 147 Ga.App. 271, 248 S.E.2d 512 (1978), rev'd., 243 Ga. 319, 253 S.E.2d 755 (1979); *Woods v. State of Georgia*, 109 Ga.App. 225, 136 S.E.2d 18 (1964); *Valdosta, Moultrie & Western Railroad Co. v. Citizens Bank of Valdosta*, 14 Ga.App. 329, 80 S.E. 913 (1914).

actually been obtained on the debt or the debt had been collected, the debtor having had full opportunity to present any defenses. In the instant case, neither a judgment nor collection of the debt followed the notice given by First Bank. Rather, a settlement was reached which interrupted the collection process. The debtor's opportunity to present his defenses was thus cut off. Until the debtor's opportunity to present his defense has expired, e. g., because the debt is collected or because a judgment is entered, the creditor's right to attorney's fees may be defeated by whatever defense is available to debtor. Our conclusion is supported by *Citizens & Southern National Bank v. Bougas*, 149 Ga.App. 722, 256 S.E.2d 37 (1979), which denied a claim for attorney's fees even though the ten-day notice was properly given and even though the debt was actually collected, because the debt was not collected "by or through an attorney" as required by the statute. The debt was collected by the C & S Bank by setting off other funds of the debtor which were under the bank's control. If the debt of Tobler in the instant case had been satisfied following the settlement agreement, by set off or voluntary payment, Yoder & Frey would not have been entitled to attorney's fees under the *C & S* case. Accordingly, there is no merit to Yoder & Frey's argument that there is an automatic entitlement to attorney's fees upon the expiration of ten days after the notice given by First Bank.

Having concluded that the notices given by Yoder & Frey itself were deficient and having concluded that Yoder & Frey cannot benefit from the notice given by First Bank, we affirm the district court's rejection of Yoder & Frey's claim for attorney's fees.

### INTEREST

We hold, also, that the district court did not err in its determination that 13½% per annum was the proper rate of interest on the note in question. We agree with the district court that both the note itself and the conduct of the parties indicate that the agreed interest rate was 13½% per annum. The note form provided a blank in which the interest rate "until paid in full" was to be inserted. The blank was left vacant. However, in another place on the face of the note, i. e., the Truth in Lending disclosure blank, the interest rate was stated as 13½%. This disclosure, and the explanation by the bank president and vice-president that the 13½% rate set out in the Truth in Lending provision was the interest rate, are extrinsic or parol evidence of what should have been in the interest blank of the note. That evidence is admissible to explain the ambiguity as to interest rate. *Jarrett v. Pittsburgh Plate Glass Co.*, 131 F.2d 674 (5th Cir. 1942). Moreover, debtor paid interest on the note at 13½% both prior to and after maturity. We affirm the district court's holding that the parties agreed that Yoder & Frey would be paid 13½% interest.

AFFIRMED.