In re Scott WALSEY, Debtor.

In re Franklin TRELL, Debtor.

**FIDELITY NATIONAL BANK, Plaintiff,**

v.

**Scott WALSEY, Franklin Trell, and Sam Plowden, Trustee, Defendants.**

**Bankruptcy Nos. 80–01128A, 80–01129A. Adv. No. 80–0431A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Dec. 18, 1980.

Dale R. F. Goodman, Atlanta, Ga., for Scott Walsey and Franklin Trell.

Daniel E. Raskin, Lefkoff, Pike, Fox & Sims, P. C., Atlanta, Ga., for Fidelity Nat. Bank.

Joseph C. Parker, Downey, Cleveland, Moore & Parker, Marietta, Ga., for First Bank.

## OPINION

HUGH ROBINSON, Bankruptcy Judge.

### FINDINGS OF FACT

The Court has before it objections to the confirmation of the chapter 13 composition plans proposed by the debtors in the above-styled cases. Because the debtors are jointly obligated to the two objecting creditors and the issues presented in each case are identical, these cases have been consolidated for the purpose of determining whether these plans may be confirmed.

On April 7, 1980 Franklin B. Trell, ("Trell"), and Scott A. Walsey ("Walsey"), each filed a petition under chapter 13 of the Bankruptcy Code. Each debtor filed a plan which proposed payment of 100% of the claims of secured creditors and 10% of the claims of unsecured creditors. Two of the debtors' unsecured creditors, First Bank and Trust Company, ("First Bank"), and Fidelity National Bank, ("Fidelity"), filed objections to the confirmation of these plans.

Trell and Walsey are indebted to First Bank on two promissory notes executed jointly by Trell and Walsey and on two promissory notes executed by The Pier, Inc. on which Trell and Walsey are guarantors. The total principal and interest due on the notes at the time of the confirmation hearing was $36,753.30. First Bank also claims an additional $4,643.53 for attorney's fees.

The claim of Fidelity is based on a promissory note in the amount of $8,000.00 which was jointly executed by Trell and Walsey.

Both creditors claim that they extended credit to the debtors herein in reliance on materially false financial statements. It is argued that these loan debts would be nondischargeable in a chapter 7 case under 11 U.S.C. § 523(a)(2)(B). Both creditors take the position that by reason of the alleged nondischargeability of the debts in question, they would be able to collect 100% of their respective claims against the debtors. Because the plans of Trell and Walsey provide for payment of only 10% of the unsecured claims it is asserted that the plans do not comply with the requirement of 11 U.S.C. § 1325(a)(4) that an unsecured creditor must receive no less than the amount that would be paid on the claims in a chapter 7 case.

Fidelity has asserted an additional basis for challenging the conformity of the plans to the requisites of 11 U.S.C. § 1325(a)(4). This charge derives from the fact that certain assets which are listed in the financial statements of Trell and Walsey that were presented to Fidelity are not listed in the bankruptcy schedules filed with the debtor's petitions. With regard to Trell the omitted assets include bonds having a face value of $15,000.00, 10 shares of Xerox stock, 55 shares of AT&T stock, 4 accounts receivable totaling approximately $21,600.00, insurance having a cash surrender value of $6,000.00, the debtor's residential real property valued at $130,000.00, a quarter interest in lake property valued at $210,000.00, and fixtures and equipment valued at $56,721.00.

The assets omitted from Walsey's bankruptcy schedules include Big Mac bonds, 50 shares of Cobb Bank & Trust stock, two accounts receivable totaling approximately $15,000.00, life insurance having a cash surrender value of $2,000.00, the debtor's residential real property, and a partial interest in real estate equities valued at $21,500.00.

It is contended by Fidelity that if these assets were recovered and liquidated they would provide funds from which unsecured creditors could recover greater than 10% of their claims.

The creditors also challenge the plans on good faith grounds. They argue that Trell and Walsey failed to make full disclosure of their assets in their bankruptcy petitions. It is also alleged that the debtors chose to proceed under chapter 13 rather than chapter 7 in order to elude the provisions of 11 U.S.C. § 523 concerning the dischargeability of debts. Fidelity further argues that Trell and Walsey did not propose their plans in good faith as required by 11 U.S.C. § 1325(a)(3) for the reason that the plans do not provide for meaningful payments to unsecured creditors.

■ A. Objection Based on 11 U.S.C. § 1325(a)(4)

I. *Dischargeability*

Section 1325(a)(4) reads:

"(a) The court shall confirm a plan if—
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; . . ."

The issue presented to the Court is whether a chapter 13 composition plan must provide for full payment of a debt which would be nondischargeable in a chapter 7 case. Fidelity and First Bank both allege that the debts owed to them by Trell and Walsey are nondischargeable under 11 U.S.C. § 523(a)(2)(B). Oral testimony and documentary evidence concerning the dis-

chargeability of the debts in question were presented to the Court at the confirmation hearing. For the purpose of determining the merits of the creditors' position the Court will assume without deciding that the debts owed by Trell and Walsey to the objecting creditors are nondischargeable.

Most decisions which have addressed this issue have held that Section 1325(a)(4) refers only to the quantitative distributive provisions of chapter 7. *In re Hurd*, 4 B.R. 551, 2 C.B.C.2d 190 (Bkrtcy.W.D.Mich.1980); *In re Jenkins*, 4 B.R. 278, 2 C.B.C.2d 129 (Bkrtcy.D.Colo.1980); *In re Cole*, 3 B.R. 346, 1 C.B.C.2d 795 (Bkrtcy.S.D.W.Va.1980); *In re Marlow*, 3 B.R. 305, 1 C.B.C.2d 705 (Bkrtcy.N.D.Ill.1980). However, it has been held that a debtor's inability to discharge an obligation is something of value which a creditor would be paid in a chapter 7 case. *In re Chaffin*, 4 B.R. 324, 2 C.B.C.2d 229 (Bkrtcy.D.Kan.1980); *In re McMinn*, 4 B.R. 150, 1 C.B.C.2d 1007 (Bkrtcy.D.Kan.1980). In each of those cases it was held that a plan which does not provide for payment of this value does not conform to the requirements of Section 1325(a)(4) and cannot be confirmed.

The objecting creditors apparently value their right to pursue their claims against the debtors in the future at the full amount of their claims. But full payment of a claim is not the inevitable result of a judgment declaring a debt nondischargeable. This alone is enough to mortally wound the assertion that 100% of a nondischargeable debt must be paid under a chapter 13 plan.

The value of a judgment of nondischargeability would be derived from the right of a creditor to pursue the debtor in the future for collection of the debt. As was pointed out in the *Hurd* case it would be impractical for the court to place a value on a creditor's right of action against a debtor. Many factors would have to be taken into consideration such as the collectability of the judgment and the cost of taking action to collect the debt. There is no way the Bankruptcy Court could accurately estimate such things. This Court concludes that the value of the right to take action in the future to

collect a nondischargeable debt is not contemplated in § 1325(a)(4) as something paid to a creditor in a chapter 7 case.

Another matter considered in the *Hurd* case is the effect the interpretation given to Section 1325(a)(4) in *McMinn* and *Chaffin* would have on 11 U.S.C. § 1328(a) which provides for the discharge of a debtor in a chapter 13 case. Upon completion of a plan under chapter 13, the debtor is granted a discharge of his debts including those that would be nondischargeable in chapter 7 proceedings with the exception of family support obligations and long term payments which extend beyond the payment period of the plan. 11 U.S.C. § 1328(a); *In re Burrell*, 2 B.R. 650, 1 C.B.C.2d 474 (Bkrtcy.N.D. Calif.1980); *In re Keckler*, 3 B.R. 155, 1 C.B.C.2d 574 (Bkrtcy.N.D.Ohio 1980); *In re Marlow, supra*. To permit the nondischargeability of a debt to bar confirmation of a plan for lack of compliance with Section 1325(a)(4) would in effect read the provisions of 11 U.S.C. § 523(a) into Section 1325(a)(4) and render Section 1328(a) a nullity.

This Court concludes that the issue of the nondischargeability of a debt is not relevant to the determination of whether a chapter 13 plan complies with § 1325(a)(4).

## II. *Undisclosed Assets*

■ Fidelity alleges that the debtors have concealed assets. According to Fidelity the liquidation of the undisclosed assets and the assets disclosed by the debtors would generate sufficient funds to allow unsecured creditors to recover greater than 10% of their claims. Fidelity's assertion is based on the fact that some of the assets listed in the financial statements of Trell and Walsey dated August 1, 1979 and September 1, 1979 respectively were omitted from the bankruptcy schedules filed by the debtors on April 7, 1980.

At the confirmation hearing oral testimony was presented to the Court concerning the disposition of the assets which were not included on the bankruptcy schedules.

Trell testified that he is no longer owner of the Israel bonds, the Xerox stock or the quarter interest in the lake property. The AT&T stock, the residential real property and the fixtures and equipment are owned by members of Trell's family and were so owned at the time Trell's financial statement was prepared. Two of the accounts receivable listed in the financial statement were discounted and the two remaining accounts are worthless for the reason that the obligors are business enterprises which have ceased operations. Trell's life insurance policy no longer has a cash surrender value.

Walsey's testimony revealed that he no longer owns the Big Mac Bonds, the residential real property, or the fixtures and equipment. One account receivable listed on Walsey's financial statement was liquidated. The other account receivable is worthless because the obligor is a business which is no longer functioning. The cash surrender value of Walsey's life insurance policy was withdrawn to pay premiums. Walsey's son is the true owner of the Cobb Bank & Trust stock and was the owner at the time Walsey's financial statement was prepared. Although Walsey still owns a partial interest in real estate equities, this asset actually is a 2½% interest in losses generated by a shopping center.

After considering the uncontroverted testimony of the debtors the Court finds that the debtors have satisfactorily explained the omission of these assets from their bankruptcy schedules and concludes that there are no concealed assets owned by the debtors which would be available for distribution to creditors in a chapter 7 case.

Both of the debtors have exempted all of their assets. The unsecured creditors of Trell and Walsey would have received nothing if the debtors' estates had been liquidated under chapter 7 of the Bankruptcy Code. The plan proposed in each case provides for the payment of 10% of the unsecured claims. Because the unsecured creditors are not receiving less than they would have been paid in a chapter 7 case, this Court concludes that the plans conform to the requirements of 11 U.S.C. § 1325(a)(4).

■ B. Objections Based on 11 U.S.C. § 1325(a)(3)

I. *Nondischargeability of Debts*

Section 1325(a)(3) reads:

"(a) The court shall confirm a plan if—
(3) the plan has been proposed in good faith and not by any means forbidden by law; . . ."

The creditors have asserted several objections to the confirmation of the plans under paragraph (3) of Section 1325(a). Fidelity and First Bank allege that the debtors' plans were not filed in good faith because the debtors' initial decision to file their petitions under chapter 13 was motivated by a desire to evade the dischargeability provisions of 11 U.S.C. § 523(a). It is also alleged that the plans were not filed in good faith for the reason that Trell and Walsey did not make full disclosure of their assets. Fidelity further challenges the debtors' good faith in proposing their plans through the assertion that the plans do not provide meaningful payment to unsecured creditors.

It has been held that the inclusion of a nondischargeable debt in a chapter 13 composition plan does not evidence a lack of good faith. *In re McBride*, 4 B.R. 389, 2 C.B.C.2d 302 (Bkrtcy.M.D.Ala.1980). In that case the debtor included in his plan a debt which had been adjudged nondischargeable in a prior chapter 7 case.

A plan which provided for the payment of a nondischargeable debt was confirmed over the objection that it was not filed in good faith in *In re Keckler, supra*. The Court said:

"Congress surely was aware that Chapter 13 would make certain persons eligible for discharge of certain debts that would be nondischargeable debts under Chapter 7"

3 B.R. 155, 2 C.B.C.2d at 304.

On the other hand, in the case of *In re Marlow, supra*, the court considered the possible nondischargeability of a debt as a factor in making a determination of whether the plan was filed in good faith. The court found that a 1% plan which provided for the payment of a debt as to which there was a bona fide threat of nondischargeability was not filed in good faith.

This Court is inclined to follow *McBride* and *Keckler*. Chapter 13 provides for a broader discharge than that provided for in chapter 7. Even debts which would be nondischargeable in a chapter 7 case are discharged in a chapter 13 case if the debtor completes his plan. *In re Burrell, supra, In re Marlow, supra, In re Keckler, supra.* By including a potentially nondischargeable debt in a chapter 13 plan, a debtor is doing nothing more than that which is permitted by the provisions of chapter 13. An absence of good faith should not be inferred from an action taken by the debtor which is permitted by the statute. The Court concludes that the confirmation of these plans should not be denied for the reason that they provide for the payment of debts which may have been nondischargeable in a chapter 7 case.

II. *Disclosure of Assets*

■ Both creditors allege that Trell and Walsey failed to disclose all of their assets to the Court in their bankruptcy schedules. In making this assertion the objecting creditors point to the fact that some assets which were listed on the financial statements of the debtors were omitted from their bankruptcy petitions.

Most of the assets listed on the financial statements given by Trell and Walsey to First Bank are identical to those on the financial statements given by the debtors to Fidelity. The Court has already concluded that these particular assets are not available for distribution to the creditors; therefore, there is no need to discuss them further.

However, there are other assets on the financial statements given to First Bank which do not appear on the financial statements given to Fidelity or on the bankruptcy schedules. These assets include an account receivable in the amount of $5,000.00 and antiques, fixtures, jewelry and furs valued at $56,721.00 listed on Trell's financial statement and jewelry valued at $53,000.00 and Atlanta Passports stock listed on Walsey's financial statement.

Upon consideration of Trell's uncontroverted testimony the Court finds that Trell was not the true owner of the entire $56,721.00 worth of antiques, fixtures, jewelry and furs. The Court further finds that Trell's remaining interest in these items has been disclosed on his bankruptcy schedules. Trell's testimony established that the account receivable had been discounted.

After considering Walsey's testimony the Court finds that Walsey owned only $18,000.00 in art and jewelry, the remainder being property of his wife. Part of this property was given to one of Walsey's creditors in satisfaction of a debt. The remaining property was scheduled in Walsey's petition and exempted. Atlanta Passports is no longer in business, therefore the stock Walsey holds in this company is of no value.

■ This Court is of the opinion that any person petitioning the Bankruptcy Court for relief has a duty to make full disclosure of his assets as an element of good faith required by 11 U.S.C. § 1325(a)(3). Failure to do this evidences a lack of good faith on the part of the debtor. After reviewing the evidence in this case the Court concludes that the debtors have satisfactorily fulfilled their duty to disclose all of their assets.

### III. *Meaningful Payments*

■ Fidelity contends that the debtors' plans do not provide for meaningful payments to their unsecured creditors, therefore the plans are not proposed in good faith.

Most courts have been reluctant to mandate a particular quantum of payments that must be made in order to satisfy the good faith requirements of Section 1325(a)(3). Instead of requiring payment of a specific portion of the unsecured debts, many courts have opted for a flexible "meaningful payments" standard. This standard was adopted in *In re Montano*, 4 B.R. 535, 2 C.B.C.2d 431 (Bkrtcy.D.D.C.1980); *In re Iacavoni*, 2 B.R. 256, 1 C.B.C.2d 331 (Bkrtcy.D.Utah 1980) and *In re Marlow, supra*. An application of this standard requires an examination of the circumstances of each debtor taking into consideration factors such as the budget of the debtor, the future income and payment prospects of the debtor, the dollar amount of debts outstanding, the proposed percentage of repayment and the nature of the debts sought to be discharged. *In re Iacavoni, supra*. Similar flexible standards have been developed by other courts. See *In re Schongalla*, 4 B.R. 360 (D.Md.1980) (reasonable effort to deal fairly with creditors); *In re Bellgraph*, 4 B.R. 421 (W.D.N.Y. 1980) (sincere, meaningful and honest effort to pay creditors); and *In re Beaver*, 2 B.R. 337, 1 C.B.C.2d 609 (Bkrtcy.S.D.Calif.1980) (meaningful attempt to come to terms with one's creditors). By formulating these various standards, some courts have attempted to find a means to determine how much a debtor should pay to his unsecured creditors under a chapter 13 plan.

Several courts have rejected the whole concept of the embodiment of a payment requirement in the phrase "good faith" as a confirmation standard. *In re Terry*, 3 B.R. 63, 1 C.B.C.2d 525 (Bkrtcy.W.D.Ark.1980); *In re Cloutier*, 3 B.R. 584, 1 C.B.C.2d 909 (Bkrtcy.D.Colo.1980); *In re Harland*, 3 B.R. 597, 1 C.B.C.2d 973 (Bkrtcy.D.Neb.1980). These decisions stem from a reluctance on the part of the court to engraft additional conditions onto those already contained in Section 1325(a).

This Court can find no justification for interpreting good faith in 11 U.S.C. § 1325(a)(3) to mean that payments to unsecured creditors, meaningful or otherwise, must be provided for in a chapter 13 plan. Paragraph 4 of Section 1325(a) alone places a quantitative minimum on what amount must be paid to an unsecured creditor under a plan. To concoct some other minimal payment requirement as a condition of confirmation would amount to judicial legislation.

From the foregoing the Court concludes that the creditors failed to prove that the debtors' plans were not proposed in good faith.

### OTHER OBJECTIONS

■ Fidelity asserted two other objections to the confirmation of the debtors' plans.

The mortgages on the homes of Trell and Walsey are being paid outside of the plans. Because in the case of each debtor the home is owned in the name of the debtor's wife, Fidelity argues that the mortgagees are unsecured creditors of Trell and Walsey. Fidelity contends that the mortgagees are getting preferred treatment over other unsecured creditors without a legally cognizable reason.

It is also alleged by Fidelity that Trell and Walsey were not eligible for relief under chapter 13 of the Bankruptcy Code at the time their petitions were filed because they each had more than $100,000.00 in unsecured, noncontingent debt.

These two objections were asserted for the first time in Fidelity's post trial briefs. The Court will not allow new objections to be raised in this untimely manner. Accordingly the Court refuses to consider these objections.

As the plans proposed by the debtors appear to be in compliance with the provisions of 11 U.S.C. § 1325(a), confirmation will be granted.

## ATTORNEY'S FEES

Each of the promissory notes on which Trell and Walsey are obligated to First Bank contains a provision that requires the debtor to pay 15% of the principal amount and interest as attorney's fees if the note is collected by or through an attorney-at-law. First Bank claims that $4,643.53 in attorney's fees is due by the debtors on three of the promissory notes. No claim has been made for attorney's fees on the fourth note.

The applicable statutory provision is Ga. Code Ann. § 20–506(c)[1] the pertinent part of which reads:

"Obligation to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and en-

forceable, and collectible as part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions ... (c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice."

It has been stipulated that proper notice of the enforcement of the attorney's fees provision was given in accordance with this statute. The only area of contention appears to be whether Ga.Code Ann. § 20–506(c) requires actual collection of the debt before such attorney's fees may be assessed.

█ The conditions precedent to recovery of attorney's fees under Ga.Code Ann. § 20–506(c) are that collection be made by an attorney at law, that the debt has matured, that the contract included an obligation to pay attorney's fees and that the required 10 days notice has been given and the 10 day period has expired without payment of principal and interest in full. *General Electric Credit Corporation of Georgia v. Brooks*, 242 Ga. 109, 249 S.E.2d 596

1. Because First Bank is an unsecured creditor 11 U.S.C. § 506(b) is inapplicable. This section provides:

"(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection

(c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim *and any reasonable fees, costs, or charges* provided under the agreement under which such claim arose."

(1978); *Adair Realty and Loan Company v. Williams Brothers Lumber Company*, 112 Ga.App. 16, 143 S.E.2d 577 (1965). There must be full compliance with these conditions before a creditor may collect these attorney's fees. *Holt v. Rickett*, 143 Ga. App. 337, 238 S.E.2d 706 (1977).

■ Although Georgia case law is not clear on the issue of whether actual collection of a debt is a condition under Section § 20–506(c), there are indications that collection is required.

In *Citizens and Southern National Bank v. Bougas*, 149 Ga.App. 722, 256 S.E.2d 37 (1979) reversed in part on other grounds 245 Ga. 412, 265 S.E.2d 562 (1980) a bank brought suit on a note after proper notice of the enforcement of the attorney's fees provision had been given. The bank's claim was satisfied by set-off, and the suit on the note was dismissed with prejudice. It was held by the Georgia Court of Appeals that the set-off was not a collection of the debt by or through an attorney. The trial court's denial of attorney's fees was upheld.

In *Strickland v. Williams*, 215 Ga. 175, 109 S.E.2d 761 (1959) the debtor had petitioned a state court for appointment of a receiver and a liquidation of assets for the benefit of creditors. Strickland, the holder of a note executed by the debtor, filed an intervention in the suit seeking possession of the collateral securing the note and enforcement of the note's attorney's fees provision. Notice of enforcement of this provision was given after the trial court had appointed a receiver and issued an injunction against the commencement of any proceedings against the debtor or his property. The trial court sustained the receiver's demurrer to Strickland's claim for attorney's fees. This decision was upheld by the Georgia Supreme Court. It was held that the injunction barred the assertion of claims for attorney's fees. The Georgia Supreme Court further held that the debt had not been collected by or through an attorney. Strickland's complaint to obtain possession of the collateral was viewed by the court as an effort to prevent rather than effect the collection of the debt.

Another indication that actual collection is required is found in this statement made by the Georgia Supreme Court in *General Electric Credit Corporation of Georgia v. Brooks, supra* 242 Ga. at 117, 249 S.E.2d 596 (1978):

"Surely in order to recover attorney fees incurred in connection with the collection of indebtedness the debt would have to mature, the contract would have had to include an obligation to pay attorney fees, and *the collection would have had to have been made by an attorney*".

(emphasis supplied).

The Fifth Circuit had to interpret Section 20–506(c) in *Tobler v. Yoder & Frey Auctioneers, Inc.*, 620 F.2d 508 (5th Cir. 1980). In the course of its discussion of the right to collect attorney's fees provided for in a note the court said:

"In the instant case, neither a judgment nor collection of the debt followed the notice given by First Bank. Rather, a settlement was reached which interrupted the collection process. The debtor's opportunity to present his defenses was thus cut off. Until the debtor's opportunity to present his defense has expired, e. g., because the debt is collected or because a judgment is entered, the creditor's right to attorney's fees may be defeated by whatever defense is available to debtor".

*Id.* at 512.

This Court concludes that actual collection of a debt is one of the conditions precedent in Ga.Code Ann. § 20–506(c) to the enforcement of contractual provisions for payment of attorney's fees. As the debts owed by Trell and Walsey to First Bank have not been collected by or through an attorney-at-law, First Bank may not recover the attorney's fees provided for in the promissory notes.

## CONCLUSIONS OF LAW

1. The chapter 13 plans proposed by Trell and Walsey comply with the provisions of 11 U.S.C. § 1325(a).

2. Because all of the conditions precedent of Ga.Code Ann. § 20–506(c) have not been fulfilled by First Bank, the provision for payment of attorney's fees in the promissory notes on which Trell and Walsey are obligated may not be enforced. It is therefore:

ORDERED that the plans of the debtors shall be and same are hereby confirmed; and it is further

ORDERED that First Bank shall not recover attorney's fees claimed under the promissory notes; and it is further

ORDERED that the motions for directed verdict made on behalf of the debtors against First Bank and Fidelity shall be and same are hereby denied as being rendered moot by this Court's decision on the merits.