**In re Gregory v. BURNS, Debtor.**

**Gregory v. BURNS, Plaintiff,**

v.

**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

**Bankruptcy No. 81–10169–ALB.**

United States Bankruptcy Court,
M. D. Georgia,
Albany Division.

Jan. 21, 1982.

Charles S. Thornton, Atlanta, Ga., for plaintiff/debtor.

E. Dunn Stapleton, Albany, Ga., for defendant/Home Federal Sav. and Loan Ass'n of Albany.

Mr. Joe M. Flournoy, Chapter 13 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

Herein, Debtor's motion objecting to claim for attorney's fees provided for in note is granted, and Defendant's objection to confirmation because Chapter 13 plan does not include payment of attorney's fee is denied.

## FINDINGS OF FACT

In this Chapter 13 case, Home Federal Savings and Loan Association of Albany asserts a claim secured by real estate, which real estate is residence of the Debtor. The security deed and note on which Home Federal bases its claim are each dated April 18, 1973 with the grantors being W. H. Mal-phurs and Earl K. Pace. The documents in support of the proof of claim do not contain a complete chain of title, and Debtor, Gregory V. Burns, acquired title to the real estate in question by deed dated March 18, 1976. This warranty deed to the Debtor makes no reference to the note and security deed to Home Federal and contains no clauses that the Debtor assumed and agreed to pay the indebtedness represented by the above note to Home Federal. The Debtor has a $10,000 equity in the real estate if it is assumed that it could be sold in these depressed times.

The promissory note dated April 18, 1973 to Home Federal contains this language, "If this loan, or any part thereof, is collected by or through an attorney at law, the undersigned agrees to pay all costs of collection, including fifteen percent attorney's fees." The undersigned are W. H. Malphurs and Earl K. Pace. The security deed does not contain any similar language as to attorney's fees, but does state that "This deed shall further secure all expenses incident to the collection of said indebtedness and the foreclosure thereof by action in any court and by exercise of the power of sale contained herein."

The Debtor through the years from time to time failed to make timely payments to Home Federal. On August 28, 1981, Debtor filed a Chapter 13 case listing Home Federal as a holder of a secured claim. Debtor at the time of filing the Chapter 13 case was behind three monthly payments of $194 for a total of $582. Debtor's plan proposed to make future monthly payments outside the plan and to pay the arrearage ($582) through the plan at the rate of $48.50 per month.

The 341(a) Meeting of Creditors was held on September 15, 1981. Home Federal's original proof of claim was filed September 16, 1981. On September 28, 1981, Debtor objected to that part of the claim of Home Federal claiming $3,270 as attorney's fees. Neither the acceptance nor rejection of the plan is indicated at item 13 of the proof of claim. Accordingly, the plan is deemed to

be accepted as indicated in italics at item 13. An amended claim was filed on October 14, which reduced the original claim for attorney's fees from $3,270 to $1,383.84. The Hearing on Confirmation was held on September 29, 1981 at which Home Federal's counsel orally objected to confirmation on the grounds that (1) past payments to Home Federal show that Debtor will not be able to make payments under the plan as required by 11 U.S.C. § 1325(a)(6); (2) Debtor failed to include payment of late charges of $17.70 in the plan; and (3) the plan did not include payment of reasonable attorney's fees incurred by Home Federal.

The plan proposed to pay one hundred cents on the dollar to unsecured creditors, which amounted to a total of $3,050. This plan was confirmed by the Court over Home Federal's oral objection at the Confirmation Hearing reserving, however, the right to Home Federal to file a motion for reconsideration of confirmation.

On October 14, 1981, Home Federal did file a motion for reconsideration, asserting the same three grounds as above stated. The Court has carefully reconsidered the Order of Confirmation. The first ground of objection to confirmation is without merit; as to the second ground, Debtor stipulated that the $17.70 late charges should be part of the claim of Home Federal, and the Court makes no ruling on this ground. The claim for attorney's fees is the only real issue in this case.

The Debtor having failed to make three monthly payments to Home Federal, Home Federal employed counsel for Home Federal to start foreclosure proceedings. Counsel for Home Federal wrote the "ten-day letter" required by Ga.Code Ann. § 20–506, dated August 12, 1981. It was received by Debtor on August 15, 1981. Debtor filed for relief under Chapter 13 of the Bankruptcy Code on August 28, 1981, thirteen days after the receipt by Debtor of the "ten-day letter." The writing of this letter was the only thing done by counsel for Debtor to start foreclosure proceedings prior to Debtor's filing his Chapter 13 case. The automatic stay stayed any further steps in foreclosure.

It should be stated here that the original claim filed September 16, 1981 claimed $3,270 as attorney's fees, this being fifteen percent provided for in the promissory note. As stated above, there is no expressed provision in the security deed for attorney's fees. On September 28, 1981, Debtor filed an objection to that portion of the claim of Home Federal claiming attorney's fees, asserting that under Georgia law Home Federal was not entitled to any attorney's fees as the debt to Home Federal was not collected "by or through an attorney at law" as required by Ga.Code Ann. § 20–506. Following the Hearing on Confirmation on September 29, 1981 in an informal conversation, the Court suggested that the matter of attorney's fees under facts herein was a nebulous and unsettled area of the law. The Court suggested that *ITT Industrial Credit Company v. Scarboro*, a decision from the District Court in this Middle District of Georgia by Chief Judge Owens be considered. The case is now reported at 13 B.R. 439. Counsel for Home Federal thereafter, apparently having read the decision, reduced the amount claimed for attorney's fees to $1,383.84.

## CONCLUSIONS OF LAW

A past history of slow pay and frequent delinquencies is no ground in the instant case for denying confirmation under 11 U.S.C. § 1325(a)(6), which provides that the court shall confirm a plan if "(6) the debtor will be able to make all payments under the plan and to comply with the plan." Most Chapter 13 cases are filed because the Debtor has a history of slow pay or because of delinquencies of payments to certain creditors. Indeed, it would be the rare case where this is not true. The very purpose of Chapter 13 is to reorganize the Debtor's affairs so that he can make timely payments to a Chapter 13 trustee for distribution to creditors. The first ground for Home Federal's objection to confirmation is, therefore, rejected. Second, as to the late charges of $17.70, the Debtor concedes that it should be a part of the debt to Home

Federal, and, accordingly, no ruling is made by this Court thereon. Third, Home Federal is entitled to no attorney's fees for the reasons hereinafter stated.

## APPLICABLE LAW AS TO ATTORNEY'S FEES

▮ Were this a Chapter 7 case and not a Chapter 13 case, *Scarboro* would provide the answer to the question of attorney's fees. If in this Chapter 13 case the real estate were liquidated, *Scarboro* would also probably be the answer. However, 11 U.S.C. § 506(b) provides for attorney's fees to the holder of a secured claim "after any recovery under subsection (c) of this section." Subsection (c) refers to "disposing of" the "property securing an allowed secured claim." In this Chapter 13 case the trustee has not disposed of the "property securing an allowed secured claim." Therefore, Home Federal is not entitled to attorney's fees under § 506(b). § 506(b) and § 506(c) anticipate the trustee reducing the collateral to cash, and this has not been done in this case. When the trustee has reduced the collateral to cash, § 506(b) says what the holder of the claim is entitled to, and § 506(c) says what the trustee is entitled to. The collateral not being reduced to cash, Home Federal is not entitled to attorney's fees by reason of 11 U.S.C. § 506(b) or *Scarboro*, the latter being a Chapter 7, or a liquidation case, in which the trustee disposed of the "property securing an allowed secured claim." There is no other provision in the Bankruptcy Code for attorney's fees of the nature sought here in this Chapter 13 case. Nor, do we find that there are any Federal "sewing machine" or "goose" cases.

No definitive Federal cases or cases from the appellate courts of Georgia have been found or cited to the Court. The latter is so, probably because there is no proceeding under Georgia law comparable to a Chapter 13 case under the Bankruptcy Code. There are a variety of Federal cases with varying results dealing with attorney's fees provided for in notes and security deeds. In *In re Weiland*, 197 F. 116 (N.D.Ga., 1912), the judge even then must have had some doubt, because on a motion for rehearing he revoked his former order allowing attorney's fees. In denying attorney's fees he concluded that the right acquired by giving notice is an inchoate and incomplete right but,

> "The intervention of the bankruptcy proceeding, therefore, prevented the right ever becoming complete and effectual," (197 F. at 119).

and the allowance of attorney's fees was denied.

Through the years the Bankruptcy Act was several times amended and then repealed by the Bankruptcy Reform Act of 1978. During the years subsequent to *Weiland*, there has accumulated a voluminous, mixed interpretation of what is now Ga. Code Ann. § 20–506 in both the Federal courts and in the courts of the State of Georgia. The Supreme Court of the United States said in *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966),

> "Yet we do not read the statutory words with the ease of a computer. [Referring to words in the Bankruptcy Act]. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." (87 S.Ct. at 277).

Likewise, herein, trying to assimilate the law expressed in this wide, mixed variety of cases and interpretations of Ga.Code Ann. § 20–506, cannot be done with the ease of a computer. As in *Bank of Marin*, there is an overriding consideration that equitable principles govern the exercise of this Bankruptcy Court's jurisdiction.

Although *National Acceptance Company v. Zusmann*, 379 F.2d 351 (5th Cir. 1967) allowed attorney's fees according to the contract, it is distinguishable from the instant case in that it was a liquidation case under the old Bankruptcy Act and not under one of the rehabilitation chapters of the old Bankruptcy Act. The instant case is under one of the rehabilitation chapters of the new Bankruptcy Code. Further, *National Acceptance* has no vitality because as stated by Judge Owens in *Scarboro*, the

Code in liquidation cases will treat clauses concerning attorney's fees differently. Also, *National Acceptance* relied heavily on *Security Mortgage Co. v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928), but there was no automatic stay until the Bankruptcy Rules, effective October 1, 1973, and the Fifth Circuit questions the continuing vitality of *Security Mortgage* in Footnote 10 in *In re Atlanta International Raceway, Inc.*, 513 F.2d 546 (5th Cir. 1975), which also was a case under the old Bankruptcy Act. *In re Atlanta International Raceway, Inc.* was a rehabilitation case under Chapter X of the old Bankruptcy Act, and is more closely analogous to the instant rehabilitation case under Chapter 13 of the new Code. There are factual distinctions between *Atlanta International Raceway* and the instant case, but the heart of *Atlanta International Raceway* is expressed at page 549:

> "The bank does not contend that attorney's fees of $120,000 have been earned herein. What the bank seeks, therefore, is a $120,000 windfall to be added to its debt, all as a consequence of the debtor being in Chapter X reorganization proceedings in bankruptcy."

In that case the debtor was not in default at the commencement of the Chapter X case and the "ten-day letter" was written after the commencement of the Chapter X case. This is no reason to hold contrary to the results reached herein. To say that a fee of $3,270 or $1,383.84 has been earned by the sending of one letter is no less a windfall to Home Federal than the windfall in *Atlanta International Raceway*. The fact that the automatic stay in the instant case became effective after the writing of one letter does not change a windfall to an earned fee. This brings us back to *Weiland*, particularly in light of the present automatic stay, and we conclude herein, paraphrasing *Weiland*, the intervention of the Chapter 13 case prevented the right to attorney's fees from ever becoming complete and effectual, and the allowance of attorney's fees should be denied.

Denial of attorney's fees because of the intervention of a bankruptcy case as held in the 1912 *Weiland* case continues as the law today in rehabilitation cases (but not in liquidation cases as shown heretofore). In *Tobler v. Yoder & Frey Auctioneers, Inc.*, 620 F.2d 508, 511–512 (5th Cir. 1980) aff'g 462 F.Supp. 788 from the Southern District of Georgia there appears:

> "The several cases cited by Yoder & Frey do contain language indicating that upon expiration of ten days after the notice, attorney's fees become 'fixed' or 'vested.' However, in all of the cases cited, either judgment had actually been obtained on the debt or the debt had been collected, the debtor having had full opportunity to present any defenses. In the instant case, neither a judgment nor collection of the debt followed the notice given by First Bank. Rather, a settlement was reached which interrupted the collection process. The debtor's opportunity to present his defenses was thus cut off. Until the debtor's opportunity to present his defenses has expired, *e.g.*, because the debt is collected or because a judgment is entered, the creditor's right to attorney's fees may be defeated by whatever defense is available to debtor. Our conclusion is supported by *Citizens & Southern National Bank v. Bougas*, 149 Ga.App. 722, 256 S.E.2d 37 (1979), which denied a claim for attorney's fees even though the ten-day notice was properly given and even though the debt was actually collected, because the debt was not collected 'by or through an attorney' as required by the statute."

The Georgia Court of Appeals case appearing in the above quote (reversed in part on other grounds at 245 Ga. 412, 265 S.E.2d 562 (1980)) contains the following:

> " 'The obligation to pay attorney fees is only a contingent liability and the debtor is not bound to pay them until there is a full compliance with conditions precedent stated in the statute.' *Holt v. Rickett*, 143 Ga.App. 337(1), 238 S.E.2d 706 (1977). Direction of a verdict against the bank on the $1,500 attorney fee item was proper."
>
> *Citizens & Southern National Bank v. Bougas, supra*, 256 S.E.2d at 41.

These quoted words, in substance, say the same thing as the 1912 *Weiland* case, i.e., all the contingencies necessary for attorney's fees must have occurred before the right to attorney's fees become "complete and effectual."

Quoting again from *Atlanta International Raceway,*

"The Supreme Court has repeatedly stated that reorganization [in the instant case, a rehabilitation case under Chapter 13, which seeks similar results] proceedings are *sui generis,* and rules appropriate in an ordinary bankruptcy may be inapplicable in a reorganization."

(*Supra,* at 550).

Also in *Atlanta International Raceway,* there appears the following:

"The trustee's task [in *National Acceptance*] was dismantling the debtor enterprise, rather than restructuring it for continued existence."

(*Supra,* at 551).

In the instant case, the Chapter 13 is not a dismantling process but is a restructuring of the Debtor's debts so that he might have a "fresh start."

■ To allow the attorney's fees sought here would effectively destroy the success of Debtor's Chapter 13 plan resulting in denial of Debtor's "fresh start." To allow such a windfall would also eliminate any possibility of payment of one hundred cents on the dollar under the plan to other creditors. The overriding equitable principles dictated by *Bank of Marin* require that attorney's fees herein be denied, particularly in light of the fact that such would amount to a windfall, would deny the Debtor a fresh start, and be a detriment to other creditors.

### HOME FEDERAL DOES NOT HAVE CLAIM

■ Although not advanced by the parties, there is yet another reason why attorney's fees should be denied. Home Federal does not have a claim against Debtor. 11 U.S.C. § 101(4) defines claim as a right of payment, and Home Federal does not have

a right of payment as against the Debtor. Home Federal may have a right against others for payment, including the original makers, but not against Debtor. As shown in the facts, the warranty deed to Debtor contains no reference to the original note and security deed and there is nothing in this record to show that Home Federal has any right of payment running from Debtor to Home Federal. The following appears in *Tomkus v. Parker,* 236 Ga. 478, 224 S.E.2d 353 (1976):

"[1, 2] 1. 'While a security deed passes legal title, it leaves an equitable title vested in the grantor which may be sold or otherwise disposed of in the same manner as a full legal title. A purchaser or grantee from the original borrower acquires the property subject to the security deed where he takes with actual or constructive notice, together with the right of redemption ... *Unless the purchaser expressly assumes the secured indebtedness, it remains only as a charge against the land and a personal liability of the original borrower.'* Pindar, Georgia Real Estate Law (1971), p. 805, § 21–49. Appellant acquired the property here subject to the security deed. Although she is not personally liable on the note, it is a lien upon the land and subject to foreclosure. She can not compel the administratrix to pay the note and thereby gain clear title to the property absent an agreement to that effect." [Emphasis added]. (224 S.E.2d at 354).

Accordingly, the security deed to Home Federal "remains only as a charge against the land," i.e., a lien, and lien means in 11 U.S.C. § 101(28) "... charge against or interest in property to secure payment of a debt or performance of an obligation." "Debt" used in this definition means, according to 11 U.S.C. § 101(12), "... liability on a claim," and as shown, claim means right of payment, and Home Federal has no right of payment from Debtor, it only has a lien. This lien the Debtor will satisfy through the Chapter 13 by making future monthly payments of principal and interest outside the plan and by curing the default pursuant to 11 U.S.C. § 1322(b)(3). There

is no lien for attorney's fees because, as shown above, attorney's fees are not provided for in the security deed. The provision quoted above in the security deed securing expenses, etc., does not embrace attorney's fees. *See Tobler v. Yoder & Frey Auctioneers, Inc.*, 462 F.Supp. 788 (S.D.Ga., 1978) *aff'd,* 620 F.2d 508 (5th Cir. 1980).

Home Federal is therefore entitled to receive payments of $48.50 per month to cure the default, also, as consented to by Debtor, the $17.70 in late charges.

An Order is entered simultaneously herewith.