**ALABAMA FOOTBALL, INC., a corporation, Plaintiff,**

v.

**Larry Rayfield WRIGHT, Defendant.**

**Civ. A. No. CA–3–75–1545–D.**

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 20, 1977.

Esther Ritz Lipshy, Timothy E. Kelley, APC, Dallas, Tex., for plaintiff.

Richard D. Cox, and Joe B. Garza, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

The cross motions for summary judgment filed by both parties on the Original Complaint of Plaintiff Alabama Football, Inc. (hereinafter "Alabama") and the motion for summary judgment filed by Defendant and Cross-Plaintiff Larry Rayfield Wright (hereinafter "Wright") on his counterclaim came on for consideration before the Honorable Robert M. Hill, United States District Judge. The court has considered the motions, the supporting and opposing briefs for both sides, and the oral arguments made by counsel and enters the following ORDER:

### ORIGINAL COMPLAINT

The initial controversy centers itself around the definition of the word "bonus." In April of 1974 the parties entered into a contract whereby Wright agreed to play professional football for Alabama for the years 1977, 1978 and 1979. As per the terms of such contract Alabama, a member of the World Football League, paid Wright a $75,000 bonus at the time of the execution of the agreement. Subsequent to the execution of this agreement Alabama and the World Football League ceased to exist, thus making the whole of the contract incapable of being performed.

Alabama now seeks the return of the $75,000 claiming a total failure of consideration for the contract and contending that unjust enrichment will result if Wright is allowed to keep such bonus amount. Alabama specifically argues that the term "bonus" in the context of the relevant contract means compensation paid for services which were to be performed in the future by Wright for the benefit of Alabama. Therefore, since the unavoidable demise of Alabama and consequently Wright's inability to perform the contemplated future services, the advanced bonus should be returned for failure of mutual exchange of consideration.

Wright denies this claim. He argues that the word "bonus" in the context of the relevant contract and in the world of professional football means simply the payment of money in consideration for signing the contract. It is argued that the act of signing itself is full consideration for the bonus paid. Wright also argues that in addition to signing the contract he gave other valuable consideration for the bonus payment made by Alabama. Such other consideration is described as forbearance in negotiating with the Dallas Cowboys, Wright's existing employer, and with all other professional football teams for the 1975–1977 football seasons and allowing Alabama to publicize his name in promotions for Alabama's team. Accordingly, Wright asserts there has been due consideration given Alabama for its payment of the bonus.

█ In the court's opinion Wright's argument is most compelling. The contract between the two parties is unambiguous. Therefore, this court's responsibility is to construe the intent of the parties and the terms of the contract from the language of the document itself and the surrounding circumstances at its execution. In considering the word "bonus" in the context of the contract and the usage made of such word in professional football, the court finds that the parties intended Wright to be paid a $75,000 bonus upon his execution of a player's contract with Alabama and that no further services were contemplated by the parties as a condition to such payment or the retention of such payment by Wright. The bonus was not paid merely in anticipation of Wright's future services as a football player, but in exchange for a fully performed act, Wright's signing of the contract. The court finds such contractual provision to be reasonable and fair.

Additionally, the court finds that Alabama benefited from the execution of Wright's player contract. Such benefit consisted of obtaining Wright's playing services by at the latest the 1977 football season and for subsequent playing seasons and obtaining an exclusive agreement prohibiting Wright from negotiating or executing any other contract with any other professional football club in any football league. Even assuming the contract required more than the execution of the contract, these benefits accruing to Alabama upon execution of the contract would provide ample consideration to support the bonus payment.

█ Having concluded that the bonus segment of Wright's players contract is supported by consideration, two issues remain: (1) whether the contract must be read together and treated in its entirety or whether the contract is in divisible segments each capable of standing alone, and (2) whether the entire contract or any of its segments has failed because of commercial frustration and impossibility of performance and therefore both parties are absolved from performance under the contract or its segments.

To determine whether this contract is severable or entire, the court must determine the intention of the parties and ascertain whether different performances were contemplated with each performance to receive an agreed compensation. *Pittsburgh Plate Glass Co. v. Jarrett*, 42 F.Supp. 723 (M.D.Georgia) modified 131 F.2d 674 (5th Cir. 1942). Additional considerations are the subject matter and the purpose of the contract, the circumstances of the parties and whether the consideration is apportioned. *MacArthur v. C.I.R.*, 168 F.2d 413 (8th Cir. 1948).

Following these guidelines, the court is of the opinion that Wright's contract although a single instrument contemplates five independent financial agreements each of which, in the circumstances of the unprovided for contingency of the financial failure of Alabama, is to be dealt with separately. Such agreements consist of payment of a bonus when the contract was executed, payment of an additional bonus when Wright first reported to Alabama's training camp, and salary payments for the first three years Wright played for Alabama in accordance with the agreed conditions in the contract. *See Sample v. Gotham Football Club, Inc.,* 59 F.R.D. 160 (S.D. N.Y.1973).

### THE COUNTERCLAIM

Finding that five distinct agreements exist in the parties' contract and recognizing that one of those agreements, the execution of the contract itself, has been validly concluded, the question becomes whether the four remaining agreements are viable, breached, and require the possible payment of damages, or whether performance of the remaining segments is impossible and thus four-fifths of the contract a nullity.

Wright contends that the remaining provisions of the contract have been breached by Alabama in failing to provide a forum where Wright could perform the agreed services and that such failure is not excused because Alabama assumed the risk that its football team might fail. Alabama asserts that because of financial circumstances beyond its control and for which it has never assumed the risk the remaining provisions of the contract are impossible to be performed.

Impossibility occurs where (1) an unexpected contingency occurs, (2) the risk of which was not allocated either by agreement or custom, and (3) the occurrence of the contingency has made performance impossible. *West Los Angeles Institute for Cancer v. Mayer,* 366 F.2d 220 (9th Cir. 1966), certiorari denied 385 U.S. 1010, 87 S.Ct. 718, 17 L.Ed.2d 548 (1967). In the present case the contingency of Alabama's financial failure does not seem to have been expected by either party. No clause is provided in the contract setting forth the parties' rights in the event Alabama or the World Football League failed and there is no evidence of discussion concerning this possibility between the parties at any time. Further, the risk of bankruptcy was not expressly or impliedly allocated to either party. Alabama could not have reasonably foreseen such sudden demise of its team and the World Football League. Finally, it is undisputed that the dissolve of Alabama's team and the World Football League has made performance of the remaining unexecuted four-fifths of the contract impossible. Accordingly, the parties are excused from further performance in compliance with the contract.

Wherefore, Alabama's motion for summary judgment is overruled; Wright's motion for summary judgment on the Original Complaint is sustained; and Wright's motion for summary judgment on his counterclaim is overruled.

It is so ORDERED.

In view of the Court's Order, Wright is requested to inform the Court of his intentions concerning his counterclaim.