**DELTA MARINA, INC.,**
Plaintiff-Appellant,

v.

**PLAQUEMINE OIL SALES, INC. and Lana Hingle, as Administratrix of the Estate of Joseph Hingle, Defendants-Appellees.**

No. 79–2726.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 4, 1981.

---

Howard E. Sinor, Jr., New Orleans, La., for plaintiff-appellant.

Peter J. Butler, New Orleans, La., for Plaquemine Oil Sales, Inc.

Before INGRAHAM, GEE and TATE, Circuit Judges.

GEE, Circuit Judge:

Since this appeal arises from a summary judgment for defendant Plaquemine Oil Sales ("POS"), plaintiff Delta Marina's ("Delta's") version of the facts is the relevant one. Delta, a retailer of petroleum products, asserts that in 1967 it entered into a contract offered it by POS, a wholesaler or "jobber" of Shell petroleum products, that called for POS to supply Delta with its requirements of diesel fuel at a price, sometimes referred to as the "jobber's" price, of one and one-half cents per gallon above POS's cost and to extend to Delta 120 days credit. The contract also required Delta to purchase goods from Gulf Seafood, another distributor of Shell products. POS honored the contract until 1973, when it began charging Delta a higher price for diesel fuel. In 1978 Delta terminated the contract and began purchasing its fuel elsewhere.

At the time the contract was made, the presidents of Delta and POS were brothers, and they and their families together owned Gulf Seafood. All three companies were incorporated in Louisiana and served the southern Louisiana area. POS denies the existence of the contract.

Delta sued POS for violations of the Sherman Act, the Robinson-Patman Act, the Emergency Petroleum Allocation Act, and the Louisiana Unfair Trade Practices and Consumer Protection Law and for breach of contract. All but the last claim, under which Delta seeks damages amounting to the difference between the price it paid POS for diesel fuel from 1973 to 1978 and the contract price, were dismissed. The district court granted POS summary judgment on Delta's breach of contract claim on the ground that the contract violated the Robinson-Patman Act and was therefore not judicially enforceable. Delta contends on appeal that the court erred in so ruling, and we agree. We find that the contract was not shown to have violated the Robinson-Patman Act and that, even had it been, it was nevertheless enforceable.

## I. *Violation of the Act.*

The contract of sale in this case would violate the Robinson-Patman Act only if similar contracts were not available to other customers of POS. If the contract was not discriminatory when made, it would not become so simply because at a later date POS sold to other customers not covered by such a contract at a price different than that at which it sold to Delta pursuant to the contract. *See Texas Gulf Sulphur Co. v. J. R. Simplot Co.*, 418 F.2d 793 (9th Cir. 1969).

■ For the contract to have contravened section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a),[1] it must, first of all,

---

1. Sections 2(a) and 2(b) of the Act, 15 U.S.C. §§ 13(a), 13(b), provide as follows:

   (a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases

   involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen

have specified a discriminatory price, *i. e.*, a price different from that which POS charged its other customers. The record, however, does not clearly establish that the price POS charged was discriminatory—certainly not clearly enough to support a summary judgment. There was some circumstantial evidence of discrimination—the price was referred to as the "jobber's" price while Delta was a retailer, and the presidents of Delta and POS were brothers—but there was no evidence of another POS customer that was denied a contract on terms comparable to those accorded Delta. *See M. C. Manufacturing Co. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1065 (5th Cir. 1975) (discrimination requires "actual sales at two different prices to two different actual buyers"), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). POS apparently argues that the fact that it would have lost money by selling to Delta on the agreed terms after 1973 demonstrates that the terms must have been discriminatory, but actually this fact only shows that the contract was, in retrospect, an unwise one for POS to have entered into in 1967.

Two other requirements for a violation of section 2(a)—and indeed for jurisdiction under the Act—are that the seller be "engaged in commerce" and that at least one of the "purchases involved" in the alleged discrimination be "in commerce." Since "in commerce" has been repeatedly held to mean "in interstate commerce," since the record apparently reveals that POS purchased its diesel fuel within the State of Louisiana, and since the record apparently fails to reveal a sale by POS, discriminatory or otherwise, outside the State of Louisiana, neither of these "in commerce" requirements appears to have been satisfied. *See, e. g., Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1143–45 (5th Cir.) (en banc), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); *Hiram Walker, Inc. v. A & S Tropical, Inc.*, 407 F.2d 4, 8–9 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); *Abramson v. Colonial Oil Co.*, 390 F.2d 873 (5th Cir.) (per curiam), *cert. denied*, 393 U.S. 831, 89 S.Ct. 99, 21 L.Ed.2d 101 (1968).

competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided*, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: *Provided, however*, That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established: *And provided further*, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: *And provided further*, That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned.

(b) Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however*, That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.

(Emphasis in original).

A violation of section 2(a) also requires a showing that the effect of the pricing adjudged to be discriminatory "may be substantially to lessen competition ... or to injure, destroy, or prevent competition." While we have held that this requirement may be satisfied simply by a showing of a "reasonable possibility" of such an effect, *Borden Co. v. FTC*, 381 F.2d 175, 178 (5th Cir. 1967); *cf. International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714 (5th Cir. 1975) (standard may be "reasonable probability"), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976), the court below made no finding of substantial potential harm to competition, and the record would not have permitted it to do so.

Even if there was a violation of section 2(a), moreover, POS would be the culpable party because only a seller can transgress section 2(a), and POS is the party advancing illegality as a defense. A buyer can normally violate the Robinson-Patman Act only if it contravenes the prohibition of section 2(f), 15 U.S.C. § 13(f),[2] "knowingly to induce or receive a discrimination in price which is prohibited by this section."[3] Under *Great Atlanta & Pacific Tea Co. v. FTC*, 440 U.S. 69, 99 S.Ct. 925, 59 L.Ed.2d 153 (1979), and *Automatic Canteen Company of America v. FTC*, 346 U.S. 61, 73 S.Ct. 1017, 97 L.Ed.2d 1454 (1953), a violation of section 2(f) generally requires, in addition to a violation of section 2(a) by the seller, knowledge by the buyer that the circumstances enumerated in sections 2(a) and 2(b) of the Act[4] that allow discriminatory prices do not obtain. While, assuming a violation of section 2(a), there was some evidence probative of a transgression of section 2(f), there was also evidence to the contrary.

We conclude, therefore, that there were insufficient undisputed facts—and indeed facts per se—to support a summary judgment.

## II. *Violation of the Act as a Contract Defense.*

Even if the sale prescribed in the contract did give rise to a Robinson-Patman violation, moreover, we find that the contract is nevertheless enforceable. The general rule is that an antitrust violation is a defense to enforcement of a contract only if "the judgment of the Court [enforcing the contract] would itself be enforcing the precise conduct made unlawful by the Act." *Kelly v. Kosuga*, 358 U.S. 516, 520, 79 S.Ct. 429, 431, 3 L.Ed.2d 475 (1959). The Court in *Kelly* indicated that this defense should not be extended beyond what is required to give effect to the federal statutes because enforceability of contracts is primarily a domain of state law, upon which federal law should not unnecessarily impinge. *Id.* at 519, 79 S.Ct. at 431. In *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), the Court decided that a violation of the Robinson-Patman Act, as opposed to the antitrust laws generally, can virtually never constitute a defense to enforcement of a contract. The Court reasoned that, while a contract can be "intrinsically illegal" under the Sherman Act because that Act forbids "contracts in restraint of trade,"

no single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a

---

**2.** A buyer can, however, transgress section 2(c) of the Act, 15 U.S.C. § 13(c):

(c) It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is

subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

**3.** The full text of section 2(f) is as follows:

(f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.

**4.** *See* note 1, *supra.*

discrimination.... It is plain that the violation, if there was one, is not inherent in the contract sued upon, ... but can only be found in different transactions which a party to the litigation had with third persons who were not parties. No such defense has been approved under the Sherman Act, and, furthermore, these characteristics show that the entire basis for judging under the two Acts is different and that the case law as to the Sherman Act does not fit the Robinson-Patman Act.

*Id.* at 755–56, 67 S.Ct. at 1020–21.

The Court in *Bruce's Juices* was also concerned that it not expand upon the sanctions Congress prescribed in the Robinson-Patman Act by adding such remedies as avoidance of private contracts. *Id.* at 750–54, 67 S.Ct. at 1018–20. While this rationale is probably not applicable here, one reason it is not is another reason for not allowing a Robinson-Patman defense to enforcement of the contract in this case: the culpable party under the Act, if there is one and only one, is POS,[5] the party trying to raise the defense. Cases such as *Bruce's Juices* and *Kelly* evince a strong reluctance to allow such a defense to enforcing a contract to be asserted even by an innocent party; one presumes the Court would be at least as reluctant to allow such a defense on behalf of a culpable one. Since absent a violation of section 2(f), moreover, it was not unlawful for Delta to receive fuel at the price POS accorded it in the contract, a court would not be enforcing illegality on Delta's part by awarding it damages for POS's failure to deliver fuel at that price.

We do not find compelling the arguments that *Bruce's Juices* does not govern this case. The district court attempted to distinguish *Bruce's Juices* on the ground that it, like *Kelly*, involved facts somewhat different from those presented here: a seller

trying to recover from a buyer part of the purchase price of goods it had sold the buyer and the buyer raising illegality as a defense. We, however, do not see a meaningful distinction in the present context between a seller's trying to recover a deficiency from a buyer and a buyer's trying to recover an overcharge from a seller, as is the case here. Nor do we find, as POS urges upon us, that *Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), and *Tampa Electric Co. v. Nashville Coal Co.*, 276 F.2d 766 (6th Cir. 1960), *rev'd on other grounds*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961), are apropos. Both of these cases involved contract defenses based on antitrust laws other than the Robinson-Patman Act, and the above-quoted passage from *Bruce's Juices* makes clear that that Act, for purposes of contract defenses, differs fundamentally from other antitrust laws. Finally, we do not think that we are bound here by *Jarrett v. Pittsburg Plate Glass Co.*, 131 F.2d 674 (5th Cir. 1942), in which this court held that a contract provision allowing a distributor a commission contrary to section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c),[6] was unenforceable and that the whole contract was therefore unenforceable. *Jarrett* was decided before *Bruce's Juices*, and it concerned section 2(c) of the Act rather than section 2(a). We need not decide whether *Jarrett* is still good law regarding section 2(c), but, given *Bruce's Juices*, it clearly does not govern section 2(a) (and hence section 2(f)).[7]

Since we have determined that the district court's finding of a Robinson-Patman violation was not warranted and that, even if it was, such a violation would not constitute a defense to enforcement of the contract, the court's grant of summary judg-

---

5. A prerequisite for Delta to have violated section 2(f) is for POS to have contravened section 2(a). *See* text following note 3, *supra.*

6. *See* note 2, *supra.*

7. In a case decided after, and in reliance upon, *Bruce's Juices*, moreover, *El Salto, S.A. v. PSG Co.*, 444 F.2d 477 (9th Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 273, 30 L.Ed.2d 253 (1971), the court of appeals held that a contract provi-

ment is REVERSED, and the case is RE-MANDED to it.[8]

sion violating section 2(c) did not render the whole contract unenforceable.

8. We note that the only issue left in this case is a claim by Delta for breach of contract and that Delta and POS are not diverse parties. While Delta initially alleged sufficient federal law claims against POS that the district court, even after the dismissal of those claims, did not abuse its discretion by exercising pendent jurisdiction to render a summary judgment on the breach of contract claim, the court on remand will have to decide whether such jurisdiction should continue to obtain.