**EEOC**

**v.**

**SAFEWAY STORES, INC.**

**v.**

**TEAMSTERS LOCAL 745, RULE 19(a)(2)**

**No. CA3–78–0134.**

United States District Court,
N.D. Texas,
Dallas Division.

March 31, 1982.

---

Fred L. Lander, III, Robert M. Jones, EEOC, Dallas Dist. Office, Dallas, Tex., for plaintiff.

Allen Butler, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for Safeway Stores, Inc.

Hal K. Gillespie, James L. Hicks, Jr., Hicks, Gillespie & James, Dallas, Tex., for Local 745.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT W. PORTER, District Judge.

This action was brought by the EEOC in an effort to force compliance with conciliation agreements reached among the EEOC, four charging parties, and Safeway Stores, Inc. The Teamsters Local 745 was joined under Rule 19. Trial was had on February 17 and 18, 1982. The issue of damages was bifurcated at trial.

## FACTS

1. Plaintiff, Equal Employment Opportunity Commission ("EEOC") is an agency of the United States Government charged with the administration and enforcement of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

2. Defendant Safeway Stores, Incorporated ("Safeway") is a corporation incorporated in the State of Maryland and doing business in the State of Texas in the City of Dallas, where it is engaged in the grocery supply and retail business. At all times material to the lawsuit, Safeway has continuously employed more than 15 employees.

3. Charging Party Willis W. Taylor is a black resident of the City of Dallas and State of Texas.

4. Charging Party Billy G. Faison is a black resident of the City of Dallas and the State of Texas.

5. Charging Party Concepcion C. Rodriguez is a person of Spanish-American extraction, and a resident of the City of Dallas and State of Texas.

6. Charging Party Fernando Cantu is a person of Spanish-American extraction, and a resident of the City of Dallas and State of Texas.

7. The Union is a labor organization as defined in Title VII of the Civil Rights Act of 1964, as amended, and in the Labor-Management Relations Act of 1947, 29 U.S.C. § 152(5). At all times material to this lawsuit, the Union has been the collective bargaining representative for the employees of Defendant Safeway Stores, Inc., in the truckdriver and warehouseman job classifications filled by Willis Taylor, Billy Faison, Concepcion Rodriguez, and Fernando Cantu.

8. Billy G. Faison applied for the position of truck driver on April 8, 1975. He was hired on June 24, 1975 and on August 9, 1975 filed a charge alleging discrimination on the part of Safeway Stores, Inc. based on race by failing to hire him to a truck driver's position. The EEOC investigated the charge and issued a Letter of Determination finding reasonable cause to believe the charge to be true. On August 23, 1976 Safeway, Faison and the EEOC entered into a conciliation agreement whereby Safeway agreed to assign Faison a seniority date of April 8, 1975, which is the date he applied for the position of truck driver. Safeway implemented Faison's new seniority date on August 26, 1976, but retracted it on September 9, 1976, allegedly in response to union threats. On January 3, 1977 EEOC, Faison and Safeway entered into an addendum to the conciliation agreement which provided that the original seniority date of June 24, 1975 would be continued for two years and Safeway would save Faison from economic harm if a layoff occurred.

9. Concepcion Rodriguez applied for the position of warehouseman and order filler on October 3, 1973 and was hired on March 22, 1976. On January 10, 1974 he filed charges of discrimination with the EEOC against Safeway alleging that Safeway failed to hire him because of his national origin. The EEOC investigated the charge and issued a Letter of Determination finding reasonable cause to believe the charge to be true. On June 24, 1976 Safeway, Rodriguez and the EEOC entered into a conciliation agreement whereby Safeway agreed to assign Rodriguez a seniority date of October 3, 1973 which is the date he applied for the position of warehouseman and order filler. Safeway never implemented the agreed seniority date, allegedly in response to union threats. On December 20, 1976 the EEOC, Rodriguez and Safeway entered into an addendum to the conciliation agreement which provided that the original seniority date of March 22, 1976 would be continued for two years and in exchange Safeway would protect Rodriguez from economic harm if a layoff occurred.

10. Fernando Cantu applied for the position of warehouseman and order filler on November 5, 1973 and was hired on March 28, 1976. On January 10, 1974 he filed charges of discrimination with the EEOC against Safeway alleging that Safeway failed to hire him because of his national origin. The EEOC investigated the charge and issued a Letter of Determination finding reasonable cause to believe the charge to be true. On June 24, 1976 the EEOC, Cantu and Safeway entered into a conciliation agreement whereby Cantu was assigned a seniority date of November 5, 1973, which is the date he applied for the position

of warehouseman and order filler. Safeway never implemented the agreed seniority date allegedly in response to union threats. On December 20, 1976 the EEOC, Cantu and Safeway entered into an addendum to the conciliation agreement which provided that the original seniority date of March 28, 1976 would be continued for two years and in exchange Safeway would protect Cantu from economic harm if a layoff occurred.

11. Willis W. Taylor applied for a promotion to truck driver on April 7, 1972. He was promoted to that position on August 4, 1974. On April 10, 1972, he filed a charge of discrimination with the EEOC alleging that Safeway Stores, Inc. discriminated against him because of his race by failing to promote or transfer him to a truck driver position. The EEOC investigated the charge and issued a Letter of Determination finding reasonable cause to believe the charge to be true. Safeway, Taylor and the EEOC entered into a conciliation agreement whereby Safeway agreed to assign Taylor a seniority date of May 22, 1972 which corresponded to the first promotion to the position of truck driver after Taylor had applied for that promotion. Safeway implemented Taylor's new seniority date on August 26, 1976 but retracted it on September 9, 1976 allegedly in response to union threats. No addendum was executed as to Mr. Taylor.

12. In addition to providing retroactive seniority, each conciliation agreement contained the following general provisions:

a. It is understood that this Agreement does not constitute an admission by the Respondent of any violation of Title VII of the Civil Rights Act of 1964, as amended.

*   *   *   *   *   *

"c. The Commission hereby covenants not to sue the Respondent with respect to the matters covered by this Conciliation Agreement, subject to performance by the Respondent of the promises and representation contained herein."

No duration was specified for the agreement.

13. Each of the three addenda stated that the "term of this Addendum Agreement shall be for a period of two (2) years following the date of its execution." Each provided that Safeway would protect the employee from economic loss for a period of two years, based on a guaranteed forty (40) hour work week. The employee agreed to accept his Company anniversary date as his seniority date for all purposes other than bidding purposes. The reason stated in the addenda for its execution was Safeway's "reasonable fear of violence and threats of economic retaliation communicated to it by officials of Local 745 . . .".

14. Teamsters Local 745 consistently took the position that Safeway could not unilaterally assign retroactive seniority dates to any employee for any reason.

15. Local 745 was requested to participate in the conciliation process, but declined to do so.

16. Teamsters Local 745 did not prevent the implementation of the conciliation agreements by threats or acts.

17. Agreement by the Union was not a condition precedent to the effectiveness of the conciliation agreements.

18. The purpose of the addenda was to provide Safeway additional time in which to attempt to secure union acquiescence to the conciliation agreements while at the same time providing the charging parties with protection from economic harm due to layoffs.

19. Safeway fully performed under the addenda.

20. Various threats were made to the charging parties by employees in connection with the retroactive seniority dates. There were minor incidents of violence. None of the threats or violence are legally attributable to the union.

21. Several grievances were filed with the union protesting the retroactive seniority awards but no action was taken on these grievances.

22. On January 10, 1978, Taylor filed a second charge of discrimination against Safeway with the EEOC alleging that Safeway had failed or refused to abide by the seniority date agreed to in the conciliation agreement dated August 23, 1976.

23. On January 15, 1979, Faison filed a second charge of discrimination against Safeway with the EEOC, alleging that Safeway had refused or failed to abide by the seniority date agreed to in the Conciliation Agreement dated August 23, 1976.

24. On January 23, 1979, Rodriguez and Cantu each filed a second charge of discrimination against Safeway with the EEOC, alleging that Safeway had failed or refused to abide by the seniority date agreed to in their respective conciliation agreements dated June 24, 1976.

25. Safeway breached its conciliation agreement with Willis Taylor.

26. Safeway breached its conciliation agreement with Billy Faison.

27. Safeway breached its conciliation agreement with Concepcion Rodriguez.

28. Safeway breached its conciliation agreement with Fernando Cantu.

29. It was not legally impossible for Safeway to perform as agreed in the conciliation agreements.

30. The Addenda Agreements did not supersede permanently the conciliation agreements.

31. The EEOC did not put on a prima facie case of discrimination, but relied entirely on the enforceability of the conciliation agreements.

32. Every finding of fact deemed a conclusion of law is hereby adopted as such.

## CONCLUSIONS OF LAW

### I. THIS COURT HAS SUBJECT MATTER JURISDICTION

■ Plaintiff's amended complaint alleges jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345, and 42 U.S.C. § 2000e–5(f)(1) and 5(f)(3). Safeway contends that this Court has no jurisdiction to enforce a conciliation agreement because it is in essence an action on a contract and Title VII does not expressly authorize the EEOC to sue on a contract. Safeway further asserts that the statute does not implicitly authorize this action under Subsection 5(f)(1) which provides for a civil action by the EEOC if the EEOC is "unable to secure from the respondent a conciliation agreement acceptable to the Commission." Safeway argues that since none of the other provisions of Title VII expressly or implicitly authorize the EEOC to sue to enforce a conciliation agreement, only the law of contracts may serve as a source for this action. Safeway asserts that since Title VII does not compel employers to reach conciliation agreements, subject matter does not flow indirectly from Title VII through 28 U.S.C. §§ 1331(a) or 1337. In support of the foregoing assertions, Safeway refers this Court to *EEOC v. Liberty Trucking Co.,* 528 F.Supp. 610 (W.D.Wis.1981).

The Supreme Court and the Fifth Circuit have extolled the virtues of voluntary conciliation and settlement of Title VII claims. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *United States v. City of Miami, Florida,* 664 F.2d 435 (5th Cir.1981). In fact, parties have a right to come to an agreement. *U.S. v. City of Miami, supra,* at 440. The policy of encouraging voluntary resolution of employment discrimination claims would be significantly impeded by the inability of parties to reach binding, negotiated settlements whether before or after the filing of a suit. The usefulness of conciliation agreements as vehicles for voluntary resolution of employment discrimination charges would be significantly reduced if the agreements were not enforceable in the forum which is most familiar with Title VII litigation. Therefore, I hold that this Court has jurisdiction under 42 U.S.C. § 2000e–5(f)(3) which provides: "Each United States district court ... shall have jurisdiction of actions brought under [Title VII]." *EEOC v. Contour Chair Lounge Co.,* 596 F.2d 809 (8th Cir.1979); *EEOC v. Mississippi Baptist Hospital* 12 FEP cases 411 (S.D.Miss.1976); *Louis Labor Health Institute,* 17 FEP cases 250 (E.D.Mo.1978).

Additionally, jurisdiction of this Court is founded on 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce); 28 U.S.C. § 1343(4) (actions to recover damages or to secure equitable relief under Acts of Congress providing for the protection of civil rights); and 28 U.S.C. § 1345 (civil actions commenced by an agency of the United States.)

## II. THE CONCILIATION AGREEMENTS ARE ENFORCEABLE

■ A conciliation agreement is specifically enforceable unless it contains provisions which are unreasonable, illegal, unconstitutional, or against public policy. I reach this conclusion through analogy to the standard of review set forth by the Fifth Circuit for consent decrees in *U.S. v. City of Alexandria,* 614 F.2d 1358 (5th Cir.1980). In each instance the parties have voluntarily reached an agreement. That one agreement was reached prior to the filing of suit while the other agreement was reached after the filing of a suit is irrelevant when reviewing the enforceability of the agreement.

■ The EEOC seeks to specifically enforce the provision of each conciliation agreement which confers on the charging party a retroactive seniority date. Retroactive seniority as a remedy in Title VII actions is not unreasonable, illegal, unconstitutional or against public policy. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444. In *Franks* the Supreme Court specifically held that retroactive seniority awards are an essential remedy in an effort to make whole a victim of discrimination. *Franks* established a presumption in favor of retroactive seniority relief within the framework of Title VII, 427 U.S. 747·at 771, 96 S.Ct. 1251 at 1267, 47 L.Ed.2d 444.

■ Teamsters Local 745 asserts that the award of retroactive seniority in this case would violate the collective bargaining agreement. The Union asserts that Safeway may not enter into an agreement granting retroactive seniority, but must litigate the discrimination charges if retroac-tive seniority is involved. This is clearly incorrect. "There is no indication in the legislative materials that § 703(h) was intended to modify or restrict relief otherwise appropriate..." *Franks,* supra at 761–2, 96 S.Ct. at 1262.

The Union's reliance on *U.S. v. City of Miami,* supra is misplaced. The challenged consent decree in that·case changed the method by which promotion would be determined from test accomplishment, as provided in the collective bargaining agreement, to seniority in instances which involved the aggrieved class. *Miami,* supra at 446. In the instant case, the seniority system itself remains totally intact with the charging parties merely being afforded their rightful place as specified in the conciliation agreement.

## III. FULL PERFORMANCE OF THE ADDENDA AGREEMENTS DOES NOT EXCUSE PERFORMANCE OF THE CONCILIATION AGREEMENTS

■ Three of the four charging parties, Cantu, Rodriquez, and Faison, entered into addenda to the conciliation agreements along with Safeway and EEOC. Safeway contends that the complete performance under the respective addenda relieves the obligation to perform under the conciliation agreements. The EEOC and the charging parties contend that the addenda were merely a temporary change in the conciliation agreements and that following the expiration of the two year term of the addenda, the conciliation agreements were again fully enforceable.

The conciliation agreements themselves contained no stated duration of the agreement. The addenda agreements were fully performed by Safeway. The pertinent terms of the addenda include: (1) Safeway would protect the employee-signatory from economic loss for a period of two years, based on a guaranteed 40-hour work week; (2) the employee-signatory would retain the date agreed to in the conciliation agreement for all purposes other than bidding; (3) for

bidding purposes, the employee-signatory would retain his original seniority date.

This Court finds that the addenda were not intended by the parties to replace the conciliation agreements. The two year term of the addenda was derived from the experience of Safeway that after two years employment, lay-off is unlikely. The two year agreements were intended to provide time for Safeway to negotiate with Local 745 and implement the agreed retroactive seniority dates at the end of the term of the addenda with the support of the union if possible. The addenda were executed in late 1976 and early 1977. At this point in time Safeway's agreement to grant the following seniority dates had already been obtained in the conciliation agreements: (1) Faison, April 8, 1975; (2) Rodriquez, October 3, 1973; (3) Cantu, November 5, 1973. It is clear that enforcement of the conciliation agreements would provide adequate protection from layoff even without the benefit of the addenda. There is no credible evidence of consideration received by the charging parties to permanently forfeit the competitive benefits of the agreed to seniority dates in exchange for layoff protection for two years. There is no language in the addenda themselves which indicate the intentions of the parties to supersede or replace the conciliation agreement for any period beyond two years.

## IV. IMPOSSIBILITY IS NOT A DEFENSE

Safeway contends it was impossible to perform under the conciliation agreements because to do so would have resulted in harm to the charging parties' persons and property by employees who were union members, and would have resulted in severe economic loss to Safeway. Impossibility occurs where (1) an unexpected contingency occurs, (2) the risk of which was not allocated, and (3) such occurrence has made performance impossible. *Alabama Football, Inc. v. Wright*, 452 F.Supp. 182 at 185.

Impossibility is no defense in this case because Safeway's Employee Relations Manager, George Smith, testified that Safe-

way and the EEOC were both aware that the union had declined to enter into the conciliation negotiations and took the position that retroactive seniority would violate the collective bargaining agreement. The protestations of employees who had been senior to the charging parties and then became junior to the charging parties pursuant to the conciliation agreement could hardly be characterized as unexpected. Further, there was no evidence of official union actions designed to force Safeway to repudiate its agreement with the charging parties and the EEOC. The few isolated incidents of employees' protests related to the granting of retroactive seniority fails to rise to the level of making performance impossible.

## V. ANY CONCLUSION OF LAW DEEMED A FINDING OF FACT IS HEREBY ADOPTED AS SUCH CONCLUSION

Each conciliation agreement will be specifically enforced to provide each charging party with his respective retroactive seniority date. This Court has no evidence that Teamsters Local 745 will in any way interfere with the execution of this judgment and therefore no relief will issue as regards the union at this time. However, should it be brought to this Court's attention that Local 745 does in fact interfere with the implementation of this Court's decision in any way, such interference will be dealt with expeditiously and appropriately.

Due to the inability of the EEOC's witness on the issue of damages to appear for continuation of her testimony, the issue of damages was reserved for hearing at a later date. Said hearing will be scheduled for April 19, 1982 at 3:30 p.m.